322 So.2d 16 (1975)
Gerald A. LEWIS, As Comptroller and Commissioner of Banking of the State of Florida, Petitioner,
v.
JUDGES OF the DISTRICT COURT OF APPEAL, FIRST DISTRICT, of the State of Florida, Respondents.
No. 47063.
Supreme Court of Florida.
July 17, 1975.
Rehearing Denied December 2, 1975.
*17 Howard Horowitz, Gen. Counsel, Miami, and William B. Corbett, Jr., Clinton H. Coulter, Jr., and Fred O. Drake, III, Asst. Gen. Counsels, Tallahassee, for petitioner.
Sam Spector and Cynthia S. Tunnicliff, of the Law Office of Sam Spector, Tallahassee, for respondents.
ENGLAND, Justice.
This is an original proceeding in our court seeking to prohibit the judges of the First District Court of Appeal from reviewing certiorari petitions filed in that court by two groups with bank charter applications pending before petitioner. Our jurisdiction is based on Article V, Section 3(b)(4) of the Florida Constitution.
We issued an order directing the judges to show cause why they should not be prohibited from entertaining the petitions, and we have received their return.

Factual Background
The background facts giving rise to this proceeding date from December 27, 1974. On that date the incumbent State Banking Commissioner, petitioner's predecessor in office, issued a "Conditional Approval Order" to each of two groups seeking to establish a new bank in Florida. The Order directed to proposed American Bank of Melbourne ("American") granted authority to "organize a new banking corporation ... upon compliance with the following conditions:
"(1) Insurance of deposits by the Federal Deposit Insurance Corporation.
(2) Fixed Asset Investment: Investment in land and building limited to 50% of capital and surplus representing statutory limitation. Total fixed asset investment, including furniture, fixtures and equipment, limited to 50% of combined capital, surplus and undivided profits. All leases to have prior approval of this office.
(3) Articles of Incorporation to be filed with Secretary of State within six months after approval by the Federal Deposit Insurance Corporation. This requirement *18 may be subject to one six months extension upon written request to this office.
(4) Opening to be accomplished within six months after approval by the Federal Deposit Insurance Corporation. Extensions may be granted at the discretion of this office."
The Order directed to proposed Mariner Bank of Tarpon Springs ("Mariner") granted similar authority upon compliance with the following conditions:
"(1) Approval for membership in the Federal Reserve System.
(2) Fixed Asset Investment: Investment in land and building limited to 50% of capital and surplus representing statutory limitation. Total fixed asset investment, including furniture, fixtures and equipment, limited to 50% of combined capital, surplus and undivided profits. All leases to have prior approval of this office.
(3) The selection of a qualified Operations Officer (Cashier) subject to the prior approval of this office.
(4) Articles of Incorporation to be filed with Secretary of State within six months after approval by the Board of Governors of the Federal Reserve System. This requirement may be subject to one six months extension upon written request to this office.
(5) Opening to be accomplished within six months after approval by the Board of Governors of the Federal Reserve System. Extensions may be granted at the discretion of this office."
On January 7, 1975, petitioner took office as the new Banking Commissioner of Florida ("Commissioner"). On January 17, petitioner notified American and Mariner ("the banks") of his intention to adopt an emergency rule which would allow him, in his official capacity, to revoke any Conditional Approval Order for a new bank.[1] The banks were also notified that their Conditional Approval Orders would be revoked on January 20 when the emergency rule would be filed and become effective. The notification stated that the Commissioner did not intend his action as a decision on the merits of the banks' applications. On January 20, the rule was filed with the Secretary of State[2] and the banks' Orders were formally revoked.
On February 18, the banks filed identical petitions for certiorari with the First District Court of Appeal seeking a review of the Commissioner's rule and revocations. After consolidation of the petitions by the district court, the Commissioner moved to dismiss both suits. His motion was denied, and a subsequent request for rehearing was similarly denied. Petitioner filed his request for a writ of prohibition here, and after oral argument we granted our order to show cause.

Issues
The principal issue for our consideration is whether the First District Court of Appeal has jurisdiction to review the emergency rule and the orders of revocation issued by the Commissioner. In order to resolve that question, we must first determine whether the 1961 or the 1974 version of Florida's Administrative Procedure Act governs the Commissioner's acts.
*19 Florida's current Administrative Procedure Act ("the new act") was enacted by 1974 Legislature to become effective (for most purposes) on January 1, 1975.[3] Section 3 of the Act (Section 120.72(2), Florida Statutes (1974)), provides for an orderly transition of administrative proceedings from the prior, repealed administrative procedure act ("the old act"), as follows:
"(2) All administrative adjudicative proceedings begun prior to January 1, 1975 shall be continued to a conclusion under the provisions of the Florida Statutes, 1973, except that administrative adjudicatory proceedings which have not progressed to the stage of a hearing may, with the consent of all parties and the agency conducting the proceeding, be conducted in accordance with the provisions of this act as nearly as is feasible."
In determining whether the old act or the new act applies to this proceeding, we are called upon to define the term "administrative adjudicative proceeding" as used in the transition rule under the new act. The new act contains a number of definitions,[4] but it has none which provides any guidance to that terminology. We believe the legislative policy for that omission was deliberate, and that the source of the term can be traced through the new act's evolution.
The concepts of the new act, and virtually all of its provisions, were first developed by the Florida Law Revision Council in the exercise of its statutory responsibility to examine Florida's statutes for defects, to recommend needed reforms, and to recommend new laws needed to bring Florida law into harmony with modern conditions.[5] On March 9, 1974, the Council adopted a wholly revised act in draft form in order to "remedy massive definitional, procedural and substantive deficiencies in existing law."[6] One important feature of the Council's draft act was an attempt to eliminate rigidity which had developed in the old act through acts of the legislature, applications of the state's agencies and interpretations by the state's courts. Some of the rigidity was attributable to an "unthinking adherence to `rulemaking' and `adjudication' procedures, as if they were wholly distinct and distinguishable."[7] The draft act expressly addressed this goal by rejecting the former notion of distinctive agency "adjudications" in favor of a range of procedures designed to focus on the extent to which agency decisions affect substantial interests. This more modern concept was fully embraced by the 1974 Legislature and built into the new act.[8]
The Council's draft act, which was adopted with minor changes by the Florida House of Representatives on April 17, 1974,[9] contained no transition provision comparable to Section 120.72(2), Fla. Stat. (1974), and it nowhere contained the term "administrative adjudicative proceeding." That provision of the new act had its genesis in a conference committee of the Florida Legislature.[10] The conference committee report, unfortunately, offers no insight into the reason for the adoption of this provision.
*20 The old act, however, contained a Part entitled "Administrative Adjudication Procedure", for which the expressed legislative intent was "to establish minimum requirements for the adjudication of any party's legal rights, duties, privileges or immunities by state agencies."[11] Under that Part, "adjudication" was defined to mean an agency "proceeding" for the formulation of an order.[12] In consideration of the placement of the term "adjudication proceeding" in the new act, and the manner of its adoption, it appears obvious to us that the purpose of this terminology was to avoid the invalidation of "adjudication" proceedings in progress under Part II of the old act. The term, therefore, necessarily derives its definition from the context of the old act. Our focus narrows, then, to an evaluation of the Department of Banking's chartering processes under prior administrative law. An analysis of the old act will show that on January 20, 1975, the pending applications of American and Mariner were in an "adjudicative proceeding" under that act.
The definitions set forth in Part II of the old act made it abundantly clear that the entire process of granting new bank charters, from initial application to final approval, was an "adjudication".[13] That process (in the technical language of the old act) was an "agency proceeding" to "grant" an "order" conferring a "form of permission". Under Section 120.72(2) of the new act, it follows that the bank charter applications of American and Mariner are to be continued to conclusion under, and governed by, the provisions of the old act.[14]
The preceding discussion does not apply to the Commissioner's emergency rule adopted on January 20, 1975. That rule was promulgated after the effective date of the new act, and since there was no rule proceeding in process prior to 1975 its effect is controlled by the new act.[15]
The Commissioner asserts an absolute right to revoke outstanding "conditional approval orders" under the old act. He contends, first, that all acts of his department prior to a final grant of approval are quasi-executive, interim actions not reviewable by any court. He also contends that there is no statutory authority for his predecessor's grant of "conditional" approval, so that revocation was a gratuitous courtesy which merely provided formality regarding a prior act which inherently lacked legal effect. We agree that the Commissioner's revocations are not reviewable in the district court, so that it is not necessary to reach his second contention.
We have consistently held that the acts of the Commissioner under the old act were quasi-executive, and as such not reviewable by certiorari in the district courts. Dickinson v. Judges of the District Court of Appeal, 282 So.2d 168 (Fla. 1973) (involving a final grant of approval within the Commissioner's powers), citing prior cases of like effect. Those authorities, coupled with the old act's stricture that only "final orders" of an agency would be subject to judicial review,[16] preclude the *21 district court's review of the banks' petitions in this case.
A final question to be answered is whether the letters of revocation required the sanction of an emergency rule, since district court review of the rule would be an act of futility if they did not. Nothing in the Florida banking code authorizes conditional approval orders. We recognize the desire of bank applicants to know that their preliminary formation activities have met with departmental approval, and we do not fault the Commissioner for providing a mechanism for interim assurances of partial compliance. Section 659.03(2), Florida Statutes, provides, however, that "the department shall approve or disapprove the application, in its discretion." The department has neither approved nor disapproved the applications of American and Mariner, and it is clear from their conditional approval orders that a number of significant events must take place before that approval could be given.[17] If the Commissioner elects to notify applicants as a class or individually that they should not rely on a prior assurance because the department intends to develop additional facts before granting approval, we see no statutory impediment to his doing so.[18] It follows that the Commissioner's emergency rule was unnecessary.
We conclude, therefore,
(1) that all applications for bank charters which were pending before the Commissioner on December 31, 1974 are to be continued to a conclusion under the old Administrative Procedure Act (unless the department and the parties consent to use the new act);
(2) that the Commissioner's letters of revocation, being quasi-executive acts under the old act, are not reviewable by certiorari in the district court;
(3) that while the department's emergency rule is governed by the new act and reviewable by the district court, any declaration concerning the emergency rule would be an act of futility since the letters of revocation had independent legal effect; and
(4) that the district court should be prohibited from considering further the petitions of the banks.
The writ of prohibition requested by petitioner is granted, and the judges of the First District Court of Appeal are prohibited from considering further the certiorari petitions filed by American and Mariner.
ADKINS, C.J., and BOYD and OVERTON, JJ., concur.
McCAIN, J., dissents.
NOTES
[1] Emergency rules may be promulgated by the Department of Banking under Section 120.54(8), Fla. Stat. (1974).
[2] The emergency rule was accompanied by a statement of the Commissioner setting forth reasons for its promulgation and indicating that the pendency of 33 conditional approval orders of the predecessor Commissioner (of which American's and Mariner's were two) had prompted its filing. Among the reasons given for the rule were (1) a lack of time to review 33 conditional approval orders before possible approval by federal authorities, (2) a desire to hold public hearings on each application, and (3) a need to secure additional factual material in light of changed economic conditions since the applications had been filed.
[3] Chapter 74-310, Laws of Florida, now appearing as chapter 120, Fla. Stat. (1974).
[4] Section 120.52, Fla. Stat. (1974).
[5] Section 13.96, Fla. Stat. (1973).
[6] Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, p. 3 (3/9/74). The work papers of the Council's reporter, including five draft statutes and accompanying commentary, are filed and available in the library of the Florida Supreme Court and in the archives of the Law Revision Council.
[7] Id. at p. 6.
[8] Sections 120.57, 120.58, Fla. Stat. (1974).
[9] H.R.Jour., 2d Reg.Sess. 352-56 (Fla. 1974).
[10] S.Jour., 2d Reg.Sess. 906, 913 (Fla. 1974); H.R.Jour., 2d Reg.Sess. 1326, 1334 (Fla. 1974). Compare S.Jour., 2d Reg.Sess. 399-401, 550-63 and H.R.Jour., 2d Reg.Sess. 912-25 (Fla. 1974), reflecting the bills adopted by the House and Senate before conference.
[11] Section 120.20, Fla. Stat. (1973).
[12] Section 120.21(2), Fla. Stat. (1973).
[13] Section 120.21, Fla. Stat. (1973).
[14] The record before us indicates that the banks have not consented to apply the new act, as Section 120.72(2) allows.
[15] See Section 120.72, Fla. Stat. (1974). It is also clear that judicial review of the rule is governed by the new act and available in the First District Court of Appeal. See Sections 120.68(2), 120.52(2) and 120.54(8), Fla. Stat. (1974). A review of the rule, or the emergency conditions requiring its quick adoption, is of no avail to the banks, however, if, as the Commissioner contends, his letters of revocation can be given independent legal effect not predicated on the authorizing rule.
[16] Section 120.31(1), Fla. Stat. (1973). Clearly the revocation of a conditional approval order does not constitute "final" action in these agency proceedings. The process of chartering banks begins with an application and ends with a grant or denial of final approval to open a banking business in a particular place. The effect of the Commissioner's revocation letters was to put the bank applicants in the same position they occupied between the time their applications were filed and the conditional orders were issued, namely in the status of pending applicants for a bank charter.
[17] The banks based their arguments on the notion that the conditional approval orders were in reality bank charters. From this premise they argue that their "charter" are property rights which cannot be divested, that the letters of January 20, 1975 commenced a new adjudication, revocation proceeding, that the new act applies to govern these proceedings, and that non-final orders are appealable under that act. The fallacy in their position is the premise. The Commissioner's conditional approval orders obviously do not constitute bank charters under the Florida bank code. Section 659.05, Fla. Stat. (1973), entitled "Authorization to engage in banking or trust business" describes the steps preliminary to entering a banking business. That section makes it abundantly clear that the first requisite for forming a bank, even before incorporation, is "approval of the application for authority to organize by the commissioner." The approval to which this refers is described in Section 659.03(2), Fla. Stat. (1973).
[18] The department could change or add additional requirements for pending applicants, thereby indirectly revoking any prior letter of conditional approval. See Section 659.04(1), Fla. Stat. (1973), authorizing the department to set financial requirements for banks.