337 So.2d 966 (1976)
CITY OF PLANT CITY et al., Petitioners,
v.
William T. MAYO et al., Respondents.
Nos. 47713, 47727, 47728, 48475 and 48489.
Supreme Court of Florida.
September 23, 1976.
*967 Paul S. Buchman, Plant City, for City of Plant City.
Lawrence Braisted, Braisted & Hill, Winter Haven, for City of Winter Haven.
Henry E. Williams, Jr., City Atty., William T. Keen, Matias Blanco, Jr., Jack W. Crooks and Stann W. Givens, Asst. City Attys., for City of Tampa.
John S. Lloyd, City Atty. and Mikele S. Carter, Asst. City Atty., Miami, for City of Miami, and John C. Chew, Frank B. Gummey, III, and Gregory J. McDole.
J. Kermit Coble, Coble, McKinnon, Reynolds & Rothert, Daytona Beach, for City of Daytona Beach.
William L. Weeks, Prentice P. Pruitt and Donald R. Alexander, Tallahassee, for respondents.
Woodie A. Liles, Public Counsel, C. Earl Henderson, Associate Public Counsel, and Donald W. Weidner, Deputy Public Counsel, Tallahassee, for the Citizens of the State of Florida.
D. Fred McMullen, Lee L. Willis and James D. Beasley, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for Tampa Elec. Co.
Ralph A. Marsicano, Tampa, and Burton M. Michaels, Tallahassee, for Florida League of Cities, Inc.
Carl R. Linn, St. Petersburg, for City of St. Petersburg.
George H. Salley, Salley, Barns & Pajon, Miami, for Maule Industries, Inc.
John S. Lloyd, City Atty., and Mikele S. Carter, Asst. City Atty., Miami, for City of Miami, amicus curiae.
*968 ENGLAND, Justice.
By petitions for writ of certiorari to the Public Service Commission we are asked to review a decision of the Commission that municipal franchise fees paid by electric utility companies in Florida should no longer be considered as a general operating expense payable by all of the utilities' customers, but rather should be separately billed by the utility to the customers of the municipalities which impose the fees.

Procedural Background
In 1974 Tampa Electric Company petitioned the Commission to increase its electric rates throughout its system. By direction of the Commission, customers and the general public were notified of the proposed rate increases in newspapers of general circulation and by inserts placed in each billing sent by Tampa Electric to its customers. None of these notices referred specifically to the treatment of franchise fees in the company's rate structure, or in any manner suggested that a new treatment for these fees would be considered.
During hearings on the proposed rate increase, the Commission's staff questioned two of Tampa Electric's officers concerning the nature of franchise fees. Evidence adduced through these witnesses showed that eleven municipalities served by Tampa Electric had negotiated franchise agreements at various dates in the past under which the company was granted permission to use municipal rights-of-way in return for a "fee" of 6% of the gross receipts obtained by the company from within municipal boundaries. Testimony was also developed to the effect that each municipality allows the franchise fees paid by Tampa Electric to be credited against property and other taxes owed by the utility to the city. None of the eleven franchise agreements were introduced into evidence during the proceeding, and no other evidence on the subject of franchise fees was developed during the proceeding.
The Commission approved a rate increase for Tampa Electric on May 21, 1975 in its Order No. 6681. Among several other matters set out in the order, the Commission abolished the traditional method of treating municipal franchise fees as a general operating expense for purposes of computing Tampa Electric's new rate charges. Instead, the Commission ordered Tampa Electric to bill customers within each city a 6% surcharge as a separate item on each bill. The effect of this directive was to place the financial burden for these franchise fees directly on the residents of the municipalities which imposed the fees, rather than spreading that cost among all customers of the utility system.
After Commission Order No. 6681 became final, the cities of Plant City, Winter Haven and Tampa filed petitions with this Court requesting that we review the franchise fee portion of the order. None of the three had been parties to the rate proceeding before the Commission, and Plant City and Winter Haven had been denied permission to intercede on the basis of late-filed requests for reconsideration. The three petitions were consolidated here, and we granted Tampa Electric and Public Counsel for the State of Florida permission to intervene. We also granted the cities of Miami and St. Petersburg, and the Florida League of Cities, Inc., permission to file briefs as a friend of the Court.
Following the entry of its order No. 6681, and as a direct consequence of reconsideration requests filed by cities which had not participated in the Tampa Electric rate proceeding, the Commission instituted a separate proceeding to determine whether it had the legal authority to require utility companies to charge franchise fees solely to customers within city limits as had been done in Order No. 6681 (and in three other orders approving rate increases for other investor-owned utility companies in the state). In that proceeding the Commission heard oral argument and considered briefs filed by interested parties (not including all of the cities now before us), but it did not permit the introduction of any evidence. On November 4, 1975 the Commission entered its Order No. 6990, declaring that it indeed had the power to treat franchise fees *969 as it had. Three days later, during our oral argument on the petitions of Plant City, Winter Haven and Tampa in this case, the existence of Order No. 6990 was brought to our attention by public counsel, who moved to supplement the record here with the record upon which Order No. 6990 was based. Shortly after oral argument the cities of Daytona Beach and Miami filed timely petitions for a writ of certiorari to the Commission, seeking to have us review Order No. 6990. (It is alleged that both cities have franchise agreements with Florida Power & Light Company, an investor-owned electric utility which in April 1975 had also been directed by the Commission to charge franchise fees to customers within municipal limits rather than system-wide.) Having denied public counsel's motion, we determined that the second Commission proceeding involves the same legal issue as that brought to us on review of Tampa Electric's rate increase order, and consolidated the petitions seeking review of Order No. 6990 with those seeking review of Order No. 6681.

Discussion of Legal Issues
1. Standing to obtain review of Commission Order No. 6681. The first issue we must decide is whether Plant City, Winter Haven and Tampa have standing to obtain review of an order entered by the Commission in a proceeding to which they were not parties. The municipalities argue that they are "persons in interest" under Section 366.10, Florida Statutes (1973), which provides:
"Any public utility or any person in interest dissatisfied with any order of the commission may have it reviewed by the supreme court by certiorari."
The Commission disagrees, cautioning that we should not construe "person in interest" to include those who have not been a party to a proceeding or else the jurisdiction of this Court will be expanded infinitely by indiscriminate and unpredictable demands to review Commission orders. In our view, the right to seek review of Commission orders is no longer governed solely by Section 366.10, and the Legislature has by more recently-enacted legislation expressly and clearly delineated the class of "persons" who may seek judicial review of the Commission's final orders.
Effective January 1, 1975, the Legislature adopted a new Administrative Procedure Act which in relevant part provides:
"The intent of the legislature in enacting this complete revision of chapter 120, Florida Statutes, is to make uniform the rulemaking and adjudicative procedures used by the administrative agencies of this state. To that end, it is the express intent of the legislature that the provisions of this act shall replace all other provisions in the Florida Statutes, 1973, relating to ... judicial review of administrative action... ."[1]
Under this directive, the "judicial review" provisions found in Section 366.10, Florida Statutes (1973), as well as those found in Part III of Chapter 120, Florida Statutes (1973), were "replaced" by Section 120.68, Florida Statutes (1975) to the extent of the procedural inconsistencies.[2] That section specifically confines the right of judicial review to a "party who is adversely affected by final agency action... ." The statutory reference to "party" appears to *970 have been advertent,[3] thereby confining the right of review to a class of persons defined precisely (for purposes of the act) in Section 120.52(10), Florida Statutes (1975).[4] It is undisputed that the municipalities seeking review of Commission Order No. 6681, as customers of the utility, were within that definition and entitled to participate in the rate proceeding.[5] If these provisions of the new act apply to the petitions filed in this case, and if the cities received adequate notice of the rate proceeding, they cannot here complain that they did not avail themselves of the right to appear in the proceeding.
(a) Applicability of new Act. The new Administrative Procedure Act generally became effective on January 1, 1975.[6] Section 120.72(2), Florida Statutes (1975), however, directs that Florida's former Administrative Procedure Act will govern "administrative adjudicative proceedings" begun prior to January 1, 1975 unless all parties agree to use the newer act. The Commission proceeding on Tampa Electric's rate increase request began in 1974. In Lewis v. Judges of the District Court of Appeal, 322 So.2d 16 (Fla. 1975), we held that the quoted term derives its definition from the former act, and in particular from Part II of that Act.[7] Judicial review under the former act was controlled by Part III of that act.[8] In light of the narrow definition contained in Section 120.72(2) of the new act, and consistent with the legislative directive for implementation of almost all other provisions of the new act effective on January 1, 1975, it seems clear that the provision of the new act pertaining to judicial review[9] was intended to apply to appellate court proceedings commenced after January 1, 1975.[10]
(b) Adequacy of notice. The Commission's notice of public hearings on Tampa Electric's proposed rate increase was in what might be called its standard or traditional form. The notice set forth the time, place, prescribed procedures, and general purpose of the hearings, and it recited the new amount and rate of return Tampa Electric was seeking. The notice also contained this statement under the caption "Tariff Revisions":
"Although the Petitioner has proposed certain revisions to its existing tariff in order to generate the additional revenues, the Commission is not bound by such proposals and will give consideration to applying said increases, if any are authorized, *971 in the manner it deems fair, reasonable and proper."
The cities argue to us that they had no way of anticipating from the Commission's notice that the Commission would adopt a cataclysmic change from the historic treatment of municipal franchise fees. The Commission argues, essentially, (i) that rate design is and always has been an open issue in any rate proceeding, (ii) that the notices here were adequate in any event because they warned customers that increases, if any, would be spread among users in any manner the Commission found to be "fair, reasonable and proper", and (iii) that the complexities of rate-making make it impossible to give notice of all matters which a final rate order might encompass.
While we are inclined to view the notice given to customers in this case as inadequate for actual notice of the precise adjustment made, we must agree with the Commission that more precision is probably not possible and in any event not required. To do so would either confine the Commission unreasonably in approving rate changes, or require a pre-hearing proceeding to tailor the notice to the matters which would later be developed. We conclude, therefore, that the Commission's standard form of notice for rate hearings imparts sufficient information for interested persons to avail themselves of participation.
Our conclusion that the Commission's original notice was adequate is dispositive of the petition filed here by the City of Tampa. Since Tampa at no time attempted to intervene in the rate proceeding or to seek reconsideration of Commission Order No. 6681, it has absolutely no standing to obtain review of that order here. The same is not true of Plant City and Winter Haven, however, since both endeavored to have the Commission reconsider its new treatment of franchise fees shortly after Order No. 6681 was entered. The adequacy of the Commission's notice does not resolve the issue of these cities' standing.
The reconsideration and intervention petitions filed with the Commission by Plant City and Winter Haven were both denied as untimely. Winter Haven cannot here complain of that denial. Its petitions were filed with the Commission on June 24, 1975, more than one month after the entry of Order No. 6681 and six days after the Commission formally denied the reconsideration requests of all active intervenors and Plant City. Under the Commission's rules, Winter Haven's petitions were simply filed too late to be considered.[11]
Plant City, on the other hand, responded to Order No. 6681 more promptly. It filed requests for intervention and reconsideration on June 5, only 15 days after Order No. 6681 was entered and during the pendency of timely reconsideration requests filed by active intervenors. Plant City argues with some force that the application of procedural rules to deny its petitions[12] is extremely harsh when significant, unanticipated rate design changes were first announced in a final rate order, and that even the Commission itself was obviously sensitive to the injustice.[13] Under these circumstances, Plant City suggests that the technical rules of appellate review should not be applied (as were the technical rules of Commission review) to bar their first and only opportunity *972 to challenge the legal foundation for the Commission's action.[14]
As we view these proceedings, we need not now decide whether the Administrative Procedure Act, due process, neither, or both are abridged when persons not a party to a proceeding in which a major policy change occurs unexpectedly and for purely procedural reasons are denied an opportunity to express their views before the Commission.[15] In this case, despite its formal denial of Plant City's petitions, the Commission in fact created a forum for the presentation of views on the legal issues which Plant City had raised. We therefore treat the separate investigative docket created by the Commission as a continuation of Plant City's request for reconsideration, and the order closing that proceeding as the Commission's denial of all reconsideration requests.[16]
2. Review of Commission Order No. 6990. In light of the way we view the Commission's second proceeding, we grant the petitions of Miami and Daytona Beach for review of Order No. 6990.
3. Analysis of franchise fee treatment. The cities argue to us that the direct assignment of franchise fees to city customers is improper for essentially three reasons:
(a) the fee is not a local "tax" as the Commission first said, but rather a form of consideration for a contract right to use municipal rights-of-way, and to that extent it is like all other general business expenses incurred in one locale for the operation of a far-flung utility system;
(b) the direct assignment of franchise fees impairs the cities' contracts with Tampa Electric, in violation of the *973 federal and Florida Constitutions; and
(c) the Commission lacked an evidentiary basis on which to change pre-existing treatment of this expense.
The Commission disputes these suggestions, stating that the characterization of these fees as "taxes" or as consideration is inconsequential, that contract amounts and terms have not been altered in any manner so that no aspect of the contracts between the cities and the utility have been legally "impaired", and that sufficient evidence was presented to support the policy change. Tampa Electric principally argues that the Commission's adjustment is merely one aspect of "rate design", a step necessary any time new rates have been approved and one peculiarly within the authority and responsibility of the Commission. Public Counsel essentially supports the Commission's authority to make the adjustment, although preferring that major changes like this be accomplished in a rule-making rather than in a rate proceeding.[17] We will analyze each of the major contentions individually.
(a) "Tax" or "consideration". In Order No. 6681 the Commission inappropriately described the cities' franchise fees as "taxes", causing unnecessary arguments here on the impropriety of treating taxes in isolation for rate-making. Although the label most appropriately assigned to the payments at issue is not determinative of the treatment or legal effect attendant to these costs, we have absolutely no difficulty in holding that the franchise fees payable by Tampa Electric are not "taxes". The cities would lack lawful authority to impose taxes of this type[18] and, unlike other governmental levies, the charges here are bargained for in exchange for specific property rights relinquished by the cities. The fact that fees are offset or reduced by taxes owed by the utility goes to the computation of their amount and not their character.[19]
(b) Impairment of contract. The amount paid by Tampa Electric to each city under its franchise fee contract is the same whether the utility collects the sum from some or all of its customers. Customers of Tampa Electric in each city have always paid some part of the amount the utility collects; the new procedure merely increases their burden. Nothing has changed as between the cities and the utility. We must conclude that the cities' contracts are no more impaired in the constitutional sense by the Commission's new collection procedure than they would be if rates were redesigned in other ways to increase their burden, for example by shifting rate levels among residential and industrial or commercial users.[20] The fact that the cities themselves are consumers and subject to higher charges does not "impair" their contract; it merely reduces the benefit of their bargain as any rate increase or rate design shift might do.[21]
*974 (c) Commission authority. Whether the adjustment approved in Order No. 6681 is characterized as "rate design" or rate-making, it is clearly an element of rate setting which is within the exclusive authority of the Commission.[22]
(d) Evidentiary basis for change. In Order No. 6681, the Commission expressed as the bases for its change in the treatment of franchise fees two grounds: technical advances in billing which make the change feasible, and the inequity of system-wide payments from customers outside municipal limits who receive no benefits from the cities' fees.[23] No one contests the present feasibility of billing municipal customers differently from other customers. The record basis for the Commission's "no-benefit" theory is vigorously challenged, however.[24]
The test to be applied on our review is the presence of substantial and competent evidence to support the Commission's finding.[25] Although we do not have a complete record to review, no one in this proceeding disputes the representation that only two utility company witnesses in the rate proceeding commented on the subject of franchise fees, and that their testimony went in general terms to the source, legal basis, nature and prior treatment of franchise fees in utility regulation. The municipalities suggest that this generic evidence is insufficient, as a matter of law, to support the change of policy brought about in Order No. 6681, and we agree.
The Commission chose to ground its new policy on new billing technology and the absence of benefits to non-municipal electric customers, two "facts" which wholly lack evidentiary support in this record. As to the former, the evidentiary deficiency is not significant because (1) no one has raised the issue here as a problem and (2) the ultimate fact on which the Commission relied is in any event well within the Commission's "expertise" as an administrative agency.[26] As to the latter, however, competent and substantial evidence is not available to support the Commission's finding. Most of the parties here have extensively briefed the Commission's "no-benefit" conclusion, suggesting economic, technological and geographical reasons for and against the Commission's result. The arguments are persuasive of one thing only  the issue is capable of fact-gathering on both sides and therefore properly requires an evidentiary hearing.
By way of clarifying our action in this case, we further state that we neither condone nor condemn the change of a traditional *975 rate-making practice of general state-wide effect, such as treatment of municipal franchise fees as a system-wide cost of doing business, in an individual rate case filed by one utility company. We are aware that the Commission has on occasion used more broad-based rule-making proceedings for changes in the treatment of utility company expenses, and as we have indicated that method appears to be superior for that purpose. But we see no statutory or constitutional impediment to implementations of change in the way it was attempted here, so long as interested and affected parties have a forum in which to challenge any change and the basis on which the action is taken is supported by the record.
For the foregoing reasons, we grant the petitions for certiorari. Order No. 6681, insofar as it relates to franchise fees imposed by municipalities, is set aside in that it is not supported by competent substantial evidence in the record. Section 120.68(10), Florida Statutes (1975). The Commission shall direct Tampa Electric to treat franchise fees charged by municipalities within its service area as general operating expenses chargeable to all customers of the utility, rather than to municipal customers alone.
We previously stated that we consider Order No. 6990 as a denial of the cities' petitions for reconsideration. On that basis, and because it would cause confusion to allow that order to remain outstanding in light of our disposition here, we also set aside Order No. 6990 on the authority of Section 120.68(9)(a), Florida Statutes (1975).
ROBERTS, Acting C.J., and ADKINS, BOYD and SUNDBERG, JJ., concur.
NOTES
[1] Section 120.72(1), Fla. Stat. (1975).
[2] Nothing in the Administrative Procedure Act purports to alter the legislative directive in Section 366.10 that review of Commission orders is had in the Supreme Court rather than in the district courts of appeal. In fact, the Act makes it clear that no such shift in the place of review was intended. See Section 120.68(2), Fla. Stat. (1975). See also, Citizens of Florida v. Mayo, 324 So.2d 35 (Fla. 1975).
[3] In Lewis v. Judges of the District Court of Appeal, 322 So.2d 16 (Fla. 1975), we discussed the evolution of the new Administrative Procedure Act. In fn. 6, we identified source documents from which the act was developed. These documents are revealing on this issue. The fourth draft statute (dated Feb. 4, 1974) prepared by the Law Revision Council's Reporter would have authorized "persons" adversely affected by agency action to obtain judicial review. (See Sup.Ct.Libr. file No. 15). The reporter's notes of the Council's meeting of Feb. 8, 1974 show a directive to change "person" to "party" as defined in the act. (See Sup.Ct.Libr. file No. 16). The reporter's final draft statute (dated Mar. 1, 1974) reflected the change. (See Sup.Ct.Libr. file No. 17). The statute as enacted contained virtually the identical provision on judicial review which appeared in the final draft statute.
[4] Contrast Section 120.52(11), Fla. Stat. (1975) which defines "person" for purposes of the act.
[5] See Section 120.52(10)(b), Fla. Stat. (1975).
[6] Chapter 74-310, § 6, Laws of Florida.
[7] Sections 120.20-.28, Fla. Stat. (1973).
[8] Sections 120.30-.321, Fla. Stat. (1973).
[9] Section 120.68, Fla. Stat. (1975).
[10] We note that the 1976 Legislature, acting after this proceeding was initiated here, specifically directed an opposite result, saying that judicial review of pre-1975 proceedings should be governed by the old act. Ch. 76-207, Laws of Florida. The effective date of the 1976 legislation, however, is June 20, 1976. That legislation cannot apply retroactively to matters then pending in appellate courts. Whatever its effect in future cases, the 1976 statute has no applicability to this proceeding.
[11] Fla. Admin. Code Rules 25-2.34, 25-2.64.
[12] In its order denying Plant City's petitions the Commission expressly held: "A review of our procedural rules leads us to conclude that the Petitions should be denied." The Commission then ruled that intervention is inappropriate after a final order is entered (Fla. Admin. Code Rule 25-2.34) and that reconsideration is prohibited to non-parties (Fla. Admin. Code Rule 25-2.64).
[13] In the order denying Plant City's petitions (Order No. 6718) the Commission considered the legal issues raised by Plant City "of material importance to not only Petitioner, but all other municipalities" served by electric utilities, indicating that it would consider these issues in a separate investigatory proceeding.
[14] Plant City correctly observes that the Commission had given it a forum to argue its views in which a victory would have absolutely no financial or practical benefit. In its Order No. 6752 initiating the separate proceeding referred to in fn. 13 and which culminated in Order No. 6990, the Commission "emphasized" that its action in that proceeding "should in no way be construed as receding at this time from the positions set forth in Order ... 6681 ... nor will any change, if any is ultimately made, be applied in a retroactive fashion. Rather, any change in policy, if such is determined to be legally necessary, will be applied on a prospective basis."
[15] Whenever the Commission utilizes the forum of an individual rate proceeding, for which non-specific notice is given, to effect a major change in rate-making policy, obviously some means should be provided to grant the persons directly affected an opportunity to be heard by the Commission. The Commission could, if it chooses, grant all affected persons a reasonable time to request reconsideration in light of the fact that changes of this type are completely unexpected and those who had not participated in the proceeding would have had no access to the alleged evidentiary foundation for the change. (In the present case, the Commission allowed only its customary seven calendar days for reconsideration petitions.) Preferably, the Commission could decide issues of statewide significance in rule-making proceedings under the Administrative Procedure Act, to avoid the lightning-like effect of adopting major policy shifts in select rate proceedings. Other alternatives may also exist, but whatever means are selected affected persons should not be notified for the first time in an announcement of imminent new utility charges that traditional billing practices or cost allocations have been replaced with procedures wholly new. Absent some reasonable way of allowing affected persons to test policy changes before they become effective, utility customers can always protect themselves by requesting intervention in all rate proceedings and thereby assure their right of judicial review as "parties". The toll in effort and paperwork for the Commission and for the courts suggests that this option should be avoided.
[16] It is difficult to view the investigative proceeding as anything else. An agency such as the Commission acts through rules in a rule-making proceeding or orders in a proceeding which does not result in a statement of general applicability. See Sections 120.52(2), (9) and (14), Fla. Stat. (1975). The separate proceeding of the Commission in this case produced no "rule" or "order", but simply declared the validity of previously-asserted legal authority. Unless the proceeding was the last inquiry into legal issues raised in the Tampa Electric rate proceeding, it was (as public counsel suggested at the one hearing the Commission held) "totally unnecessary, wasteful of Commission time and energy, and injurious to the citizens of Florida in that said docket is imposing on them an unnecessary and unreasonable expense."
[17] Public counsel also suggests that all costs identifiable separately by geographical source within a utility system should be isolated in the same manner. That policy view is not one which properly relates to the issues raised by the cities. The cities do not attack the correctness of a policy which assigns cost burdens to particular sources. Rather they argue that franchise fees do not constitute an expense which benefits only municipal consumers since out-of-city customers benefit from access lines through the cities.
[18] Article VII, Section 9(a) of the Florida Constitution limits municipal taxation to ad valorem and other statutorily authorized taxes. No authority has been provided for "utility revenue taxes".
[19] The Attorney General of Florida viewed these fees in essentially the same way. Op. Att'y. Gen. 075-231.
[20] For the same reasons, we see no violation of Section 366.11, Fla. Stat. (1975), which prevents the Commission from affecting a city's right to "continue to receive revenue from any public utility as is now provided ... in any franchise."
[21] There is some suggestion in the briefs that some or all of the franchise contracts expressly recognize the possible variations in rate payments by the cities, stating that the parties recognize the paramount authority of the Commission to set rates which will affect the cities' net revenues. As no contracts were introduced into either proceeding, we have no way to verify this suggestion and we give it no significance. We necessarily reject attempts by one of the parties here to introduce the franchise contracts into evidence, for the first time, before this Court. § 120.68(4), Fla. Stat. (1975). See also Dade County v. Marca, S.A., 326 So.2d 183 (Fla. 1976).
[22] Sections 366.04(1), 366.05(1), 366.06(3), Fla. Stat. (1975).
[23] In its brief the Commission suggests a number of other reasons for relieving non-municipal customers of franchise fee burdens. These suggestions provide some insight into the philosophy undergirding the Commission's action, but they are legally irrelevant to support the reasons recited in Order No. 6681. Section 120.68(4), Fla. Stat. (1975).
[24] The Commission summarizes its "no-benefit" analysis on p. 44 of its brief as follows: "The Commission simply cannot see how people who live in unincorporated areas in the far extremes of a company's service area (e.g., Wakulla County, for example) can derive a benefit from a charge imposed by a distant city (e.g., St. Petersburg). While it is true that the electric systems of this state are interconnected, the benefit of lines extending through St. Petersburg is still quite remote and speculative for the people of Wakulla County."
[25] Gainesville Bonded Warehouse, Inc. v. Carter, 123 So.2d 336 (Fla. 1960); Section 120.68(10), Fla. Stat. (1975).
[26] In its brief the Commission observes that other utilities under its jurisdiction, such as gas companies, have directly assigned certain municipal costs for years without technological problems. Inasmuch as the Commission is necessarily familiar with Tampa Electric's technology (Section 366.05(1), Fla. Stat. (1975)), the agency's expertise would be adequate in lieu of evidence produced at a hearing. Cf., Sections 120.57(1)(b)(5)(c), 120.57(1)(b)(7) and 120.61, Fla. Stat. (1975), as to the authority for considering matters within the Commission's expertise in proceedings which commence after December 31, 1974.