635 So.2d 96 (1994)
SANTA ROSA COUNTY, Appellant/Cross Appellee,
v.
GULF POWER COMPANY, Bellsouth Telecommunications, Inc., d/b/a Southern Bell Telephone and Telegraph Company, and Escambia River Electric Cooperative, Inc., Appellees/Cross Appellants, and
ESCAMBIA COUNTY, Appellant/Cross Appellee,
v.
GULF POWER COMPANY, Escambia River Electric Cooperative, Inc., Southern Bell Telephone and Telegraph Company, and Southland Telephone Company, Appellees/Cross Appellants.
Nos. 92-3658, 92-3803.
District Court of Appeal of Florida, First District.
March 30, 1994.
Rehearings Denied May 24, 1994.
*97 Thomas V. Dannheisser, County Atty., Milton, for appellant/cross appellee Santa Rosa County.
Robert L. Nabors, Gregory T. Steward, and Thomas H. Duffy of Nabors, Giblin & Nickerson, P.A., Tallahassee for appellant/cross appellee Escambia County.
G. Edison Holland, Jr., and Teresa E. Liles of Beggs & Lane, Pensacola, for appellee/cross appellant Gulf Power Co.
J. Nixon Daniel, III of Beggs & Lane, Pensacola, for appellee/cross appellant BellSouth.
Thomas E. Wheeler, Jr. of Bell, Schuster & Wheeler, Pensacola, for appellee/cross appellant Escambia River Electric Co-op, Inc.
ERVIN, Judge.
In these consolidated appeals, Santa Rosa County and Escambia County appeal certain *98 portions of a final declaratory judgment, the net effect of which precluded the counties from imposing franchise fees on two telephone utilities and two electric utilities, operating within the respective counties, for using the counties' rights-of-way to construct or maintain the utilities' poles and lines. Certain of the utility companies, in turn, cross appeal from portions of the judgment holding that the counties possess the regulatory power to impose franchise fees. We affirm in part, reverse in part and remand with directions.
In 1989, Escambia County adopted Ordinances 89-37 and 89-39. The former granted a non-exclusive franchise to Gulf Power Company (Gulf Power) and imposed a franchise fee equal to five percent of its gross sales of electricity each month, and the latter granted a non-exclusive franchise to Escambia River Electric Cooperative (EREC), a rural electric cooperative, pursuant to the same general terms as that conveyed to Gulf Power. In 1991, Escambia County adopted Ordinances 91-19 and 91-22, purporting to convey non-exclusive franchises to BellSouth Telecommunications, Inc. (BellSouth) and Southland Telephone Company (Southland), permitting them to use the county's rights-of-way and imposing a franchise fee for such use equal to five percent of the revenues collected from the sale of local telephone services. In 1990, the Board of County Commissioners of Santa Rosa County approved Ordinances 90-01 and 90-02, also granting non-exclusive franchises to Gulf Power Company and EREC, with terms similar to those provided in the Escambia County ordinances.
Each ordinance contained a clause allowing any of the grantees to terminate its franchise if other utilities in the respective counties did not enter into franchise agreements, or if franchise fees were not imposed within two years of the effective date of the agreements. Both BellSouth and Southland declined to enter into the agreements, asserting that section 362.02, Florida Statutes, prevented the counties from requiring them to obtain a franchise. As a result of this refusal, the electric utilities, within the time specified in the agreements, ceased paying the franchise fees and declined to enter into other franchise agreements. Subsequently, the counties brought separate suits for declaratory judgments, later consolidated, to determine the validity of the various ordinances establishing the franchises in question.
After trial, the lower court entered final declaratory judgment, making the following pertinent rulings in the alternative:
1. Non-charter counties, such as Santa Rosa and Escambia, do not require specific authority from the legislature to impose franchise fees upon utilities for the use of their rights-of-way, as such power can be reasonably implied from the powers generally delegated to them, unless there is some general or special law inconsistent therewith.
2. The Public Service Commission (PSC) has not preempted the counties' right to convey franchises to electric utilities, because the PSC does not have unconditional authority to issue certificates of convenience and necessity to electric utilities.
3. Section 425.04(11), Florida Statutes, extended a contractual offer to rural electric cooperatives, such as EREC, which, once accepted, could not be impaired; therefore, the counties were precluded by the terms of the statute from imposing franchise fees upon EREC.
4. The counties have no authority to require franchise agreements from telephone utilities, because the PSC has exclusive jurisdiction to grant territorial certificates of necessity as to them pursuant to applicable Florida Statutes.
5. The counties were equitably estopped from imposing franchise fees upon Gulf Power as a result of resolutions passed in 1926 by Escambia County and in 1928 by Santa Rosa County, conveying to Gulf Power the right to occupy the counties' roads for the purpose of constructing and maintaining electric transmission and distribution lines, and, as such, the resolutions constituted a grant of a franchise with no fee. Additionally, because the resolutions gave rise to contractual obligations, the counties could not later validly adopt ordinances imposing fees, as such acts would violate the obligation of contracts clauses of the federal and state constitutions. As a consequence, Santa Rosa County Resolution *99 92-17, repealing its 1928 resolution, was void.
6. Each franchise fee was an impermissible tax, because the amount charged bore no discernible relationship to the cost to the counties for the use of their rights-of-way in that the counties did not provide sufficient evidence to show that the amount charged was reasonable.
7. The ordinances were void under their own terms in that all utilities had not executed franchise agreements within the two years required by the ordinances.
Both counties appeal from the portion of the final declaratory judgment pertaining to rulings 3, 5, 6 and 7. Escambia County only appeals from ruling 4, while all the utilities cross appeal ruling 1, and Gulf Power cross appeals ruling 2.
We affirm rulings 1, 2, 4 and 7, but reverse 3, 5 and 6, and remand the case with directions that judgment be entered in conformance with this opinion. Each of the court's rulings is discussed in the order as above listed.

1.
In deciding that non-charter counties have home-rule authority to impose franchise fees, the trial court rejected the cross appellants' argument that the power to so act is lacking, because it is not specifically enumerated among those delegated to the counties by section 125.01, Florida Statutes (1989). We agree. Article VIII, section 1(f) of the Florida Constitution (1968) provides:
Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law ... .
(Emphasis added.) The statute broadly implements the constitutional provision by authorizing the governing body of a county, "[t]o the extent not inconsistent with general or special law," to exercise the power to carry on county government which includes, "but is not restricted to," certain enumerated powers. § 125.01(1), Fla. Stat. (1989). Subsection (1)(w) gives counties the authority to "[p]erform any other acts not inconsistent with law, which acts are in the common interest of the people in the county, and exercise all powers and privileges not specifically prohibited by law." Finally, subsection (3) provides:
(a) The enumeration of powers herein shall not be deemed exclusive or restrictive, but shall be deemed to incorporate all implied powers necessary or incident to carrying out such powers enumerated, including, specifically, authority to employ personnel, expend funds, enter into contractual obligations, and purchase or lease and sell or exchange real or personal property.

(b) The provisions of this section shall be liberally construed in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution.
(Emphasis added.)
The Florida Supreme Court has commented on the broad scope of home-rule authority conferred upon non-charter counties in no less than three opinions: Taylor v. Lee County, 498 So.2d 424 (Fla. 1986); Speer v. Olson, 367 So.2d 207 (Fla. 1979); and State v. Orange County, 281 So.2d 310 (Fla. 1973). As the court recognized in Speer, 367 So.2d at 211:
The first sentence of Section 125.01(1), Florida Statutes, (1975), grants to the governing body of a county the full power to carry on county government. Unless the Legislature has pre-empted a particular subject relating to county government by either general or special law, the county governing body, by reason of this sentence, has full authority to act through the exercise of home rule power.
Thus, the specific powers enumerated under section 125.01 are not all-inclusive, and a non-charter county's authority comprises that which is reasonably implied or incidental to carrying out its enumerated powers. The only limitation on a county's implied power to act occurs if there is a general or special law clearly inconsistent with the powers delegated. *100 As discussed later in this opinion, the only statutes which we find inconsistent with the authority of the counties to grant franchises and to impose fees thereon are those pertaining to the PSC's regulation of telephone utilities, which, we consider, have preempted the counties from so acting. Thus, we affirm the court's first ruling.

2.
Cross appellant Gulf Power argues that the pervasiveness of PSC regulation over electric utilities under chapter 366, Florida Statutes, is inconsistent with and preempts imposition of a franchise fee upon it. In this regard we agree with the trial court's finding that the prevailing theme of chapter 366 involves the regulation of rates charged by the electric utilities within the state; whereas the franchise fees in issue have no impact upon the rates of the respective utilities, in that the fees assessed are passed onto the customer, pursuant to Florida Administrative Code Rule 25-6.100(7). Additionally, section 366.13, Florida Statutes (1989), provides that "[n]o provision of this chapter shall in any way affect any municipal tax or franchise tax in any manner whatsoever." (Emphasis added.) Such provision clearly implies the counties' authority to require electric utilities to pay franchise fees for their use of the counties' rights-of-way. In any event, we find no statute clearly inconsistent with the counties' power to require franchise agreements from electric utilities for such use. We therefore affirm the court's second ruling.

3.
The court nevertheless ruled that section 425.04(11), Florida Statutes, conveyed a public grant to EREC to use the rights-of-way, which, once accepted by usage, constituted a contract which is protected from impairment by Article I, Section 10 of the United States Constitution and Article I, Section 10 of the Florida Constitution (1968). We cannot agree with the court's analysis. Section 425.04(11) provides that rural electric cooperatives shall have the power
[t]o construct, maintain, and operate electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys, bridges and causeways, and upon, under and across all publicly owned lands, subject, however, to the requirements in respect of the use of such thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof upon corporations constructing or operating electric transmission and distribution lines or systems[.]
In ascertaining whether a statutory grant of power gives rise to a contractual obligation, one must first examine the specific language of the statute, and, in the absence of an adequate expression of an actual intent by the public authority to bind itself thereby, a court should "not lightly construe that which is undoubtedly a scheme of public regulation to be, in addition, a private contract to which the State is a party." National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry., 470 U.S. 451, 466-67, 105 S.Ct. 1441, 1452, 84 L.Ed.2d 432, 446 (1985). We find nothing in section 425.04(11) revealing any clear-cut legislative intent to grant private contractual rights to rural electric cooperatives. We understand the language of the statute simply to be an expression of the legislature that such cooperatives shall be granted the right to access public thoroughfares for the purpose of operating their electric distribution lines. Nothing, however, is contained therein suggesting that the counties are precluded from placing reasonable regulations on the use of the public's rights-of-way. In fact, the counties' authority to regulate is clearly indicated by the latter portion of subsection (11), which subjects a utility's right to use the public thoroughfares to the conditions the public authority having jurisdiction may impose. Indeed, section 425.04(9), Florida Statutes (1989), which should be read in pari materia with the provisions of 425.04(11), grants cooperatives the power, among other things, "[t]o purchase or otherwise acquire ... franchises [.]" (Emphasis added.)
Consequently, we agree with the counties that section 425.04(11) cannot be interpreted as an unconditional grant of authority to rural electric cooperatives to occupy permanently *101 all rights-of-way conveyed to them pursuant to the terms of the statute, because, obviously, if the legislature intended the cooperatives' right of possession to be without restriction, it would not have been necessary to add the statutory language empowering them to acquire franchises. Accordingly, we conclude that the provisions of section 425.04(11) do not create a private contract; hence, no obligation arose therefrom which could be subsequently impaired. We therefore reverse the court's third ruling.

4.
We affirm the trial court's conclusion that the exercise of the counties' franchise fees against defendants BellSouth and Southland is preempted by operation of chapter 364, Florida Statutes. In so ruling, the trial court concluded that sections 364.32 through 364.37, Florida Statutes (1989), gave the PSC the exclusive jurisdiction to grant certificates of necessity and convenience to telephone service providers; thereby preempting the counties from enacting the ordinances at issue in regard to telephone service providers. We agree.
Florida law recognizes two kinds of preemption: express and implied. The former requires that the statute contain specific language of preemption directed to the particular subject at issue. See Hillsborough County v. Florida Restaurant Ass'n, 603 So.2d 587, 590 (Fla. 2d DCA 1992). Implied preemption occurs if a legislative scheme is so pervasive that it occupies the entire field, creating a danger of conflict between local and state laws. Id. at 590-91. In our judgment, section 364.01(2), Florida Statutes (1989), provides an express preemption from county regulation of telephone utilities by stating the following:
It is the legislative intent to give exclusive jurisdiction in all matters set forth in this chapter to the Florida Public Service Commission in regulating telephone common carriers, and such preemption shall supersede any local or special act or municipal charter where any conflict of authority may exist.
Similarly, section 364.33, Florida Statutes (1989), requires telephone service providers to apply to the PSC for certificates of convenience and necessity to construct and operate and extend telephone lines, except in territories already served by such entities. Nothing was placed in evidence below showing that section 364.33 does not apply to BellSouth or Southland. Consequently, as there was no evidence disclosing that Escambia County issued certificates of convenience and necessity to BellSouth and Southland for the purpose of constructing and operating telephone poles and lines, we affirm the trial court's fourth ruling that Escambia County's attempt to impose utility franchises or utilization fees against BellSouth and Southland is preempted by operation of chapter 364, Florida Statutes, and that the ordinances were, as to them, inconsistent with general law.

5.
Having correctly decided that no existing Florida statute was in derogation of the counties' right to impose franchise fees upon Gulf Power for its use of the public's rights-of-way, the lower court nonetheless alternatively ruled that the resolutions Escambia County and Santa Rosa County adopted in 1926 and 1928, respectively, granted Gulf Power the right to occupy the counties' roads for the purpose of constructing and maintaining electric transmission lines, without exacting a fee; thus, the counties' later attempts to impose utility franchise fees on Gulf Power by ordinance violated the clauses of the United States and Florida constitutions prohibiting impairment of the obligations of contract. In addition, the court ruled that by virtue of enacting such resolutions conveying the franchise without a fee, upon which Gulf Power relied to its detriment, the counties were estopped from asserting the defense of the invalidity of the resolutions.
We cannot agree with either of the court's two grounds for invalidating the ordinances' provisions requiring Gulf Power to pay franchise fees. In our judgment, at the time the two resolutions were adopted, the counties had no delegated authority to convey a franchise to use the counties' rights-of-way; hence, the resolutions constituted ultra vires acts, and thus neither the defense of impairment *102 of obligation of contracts nor of estoppel was available to Gulf Power.
Before the adoption of the Florida Constitution of 1968, the counties were considered to have only such powers that the legislature expressly delegated to them. Article VIII, Section 6 of the 1885 Florida Constitution provided that the "powers, duties and compensation [of county commissioners] shall be prescribed by law." As the Florida Supreme Court observed in Hopkins v. Special Road & Bridge Dist. No. 4, 73 Fla. 247, 251, 74 So. 310, 311 (1917): "County commissioners can exercise such authority only as is `prescribed by law'; and, where there are doubts as to the existence of authority, it should not be assumed." Gulf Power, however, relies upon Martin v. Townsend, 32 Fla. 318, 13 So. 887 (1893), for the position that the counties, as of the dates the resolutions were adopted, had the inherent power to sell and dispose of county property. The court's decision in Martin, however, must be considered as being limited to the facts before it, in that it involved the validity of a sale of lands in 1852 by a board of county commissioners; consequently, the validity of the sale was governed by the constitution and statutes then in effect, which authorized the sale. As the Florida Supreme Court later explained in Gessner v. Del-Air Corp., 154 Fla. 829, 17 So.2d 522 (1944), the rule announced in Martin did not continue to prevail at all times following the sale in 1852. In Gessner, the court observed that although boards of county commissioners had previously been vested with authority to sell county property, such power was extinguished upon passage of Chapter 882, Laws of Florida, Acts of 1872. The court concluded its history of Florida legislation with the following comment: "From our examination we conclude that by the act of 1872 the power to dispose of property was omitted, and has not been restored. Without such legislative delegation the commissioners could not convey." Id. 17 So.2d at 523.
As a consequence, when the 1926 and 1928 resolutions were passed, the counties only possessed authority to exercise, through their boards, such power as was delegated either by the constitution or the legislature, expressly or by necessary implication. Colen v. Sunhaven Homes, Inc., 98 So.2d 501, 503 (Fla. 1957) (involving franchise); Crandon v. Hazlett, 157 Fla. 574, 582, 26 So.2d 638, 642 (1946); Gessner, 154 Fla. at 829, 17 So.2d at 522; Scenic Hills Util. Co. v. City of Pensacola, 156 So.2d 874, 876 (Fla. 1st DCA 1963) (involving franchise). As the constitution and law then in effect precluded counties from conveying property or franchises for the use of property, and continued to do so until the adoption of the 1968 constitution, we conclude that the counties' grant of the franchises to Gulf Power in 1926 and 1928 must be considered ultra vires and of no effect. As a result, the lower court's determination that the subsequently adopted ordinances violated the contract clause of the federal and state constitutions was erroneous, because, in order to invoke the constitutional prohibition against the impairment of obligation of contracts, it must first be shown that a lawful contract existed which was subject to impairment. Mahood v. Bessemer Properties, 154 Fla. 710, 18 So.2d 775 (1944).
Moreover, counties cannot be estopped from denying the validity of acts that exceeded their delegated powers. Edwards v. Town of Lantana, 77 So.2d 245, 246 (Fla. 1955); State ex rel. Nuveen v. Greer, 88 Fla. 249, 261, 102 So. 739, 744 (1924); Jones v. Pinellas County, 81 Fla. 613, 619-20, 88 So. 388, 390 (1921); C.K. Cobb, Annotation, Estoppel of United States, State, or Political Subdivision by Deed or Other Instrument, 23 A.L.R.2d 1419, 1429 (1952). See also Crowell v. Monroe County, 578 So.2d 837, 838 (Fla. 3d DCA 1991); P.C.B. Partnership v. City of Largo, 549 So.2d 738, 741-42 (Fla. 2d DCA 1989). Therefore, the trial court's determination that the later-adopted ordinances impaired Gulf Power's contractual obligation, and that the counties were estopped from asserting the invalidity of the resolutions as a defense is reversed.[1] For the same reason *103 we reverse the trial court's determination voiding Santa Rosa County's Resolution 92-17, which repealed its 1928 resolution.

6.
As an alternative ground for invalidating the franchise fee ordinances, the trial court decided that the fees were impermissible taxes as they were based upon a percentage of gross receipts  an amount which bore no relation to the cost of regulation. Because the counties presented no evidence showing that the fees were based upon a reasonable rental value for the utilities' use of the counties' rights-of-way, the court concluded that the fees, as structured, constituted impermissible taxes. We reverse.
In the closely analogous case of City of Plant City v. Mayo, 337 So.2d 966 (Fla. 1976), the supreme court approved a franchise fee of six percent of the gross receipts Tampa Electric Company obtained in return for using municipal rights-of-way, and, in summarily rejecting the utility's argument that the fee was in fact a tax, the court replied:
[W]e have absolutely no difficulty in holding that the franchise fees payable by Tampa Electric are not "taxes". The cities would lack authority to impose taxes of this type [under the Constitution] and, unlike other governmental levies, the charges here are bargained for in exchange for specific property rights relinquished by the cities.
Id. at 973 (footnotes omitted). Accord City of Hialeah Gardens v. Dade County, 348 So.2d 1174, 1180 (Fla. 3d DCA 1977) (franchise fee from Florida Power & Light Co. to provide electricity to Dade County was not a tax, "but rather consideration paid by the utility for the grant of the franchise," following City of Plant City), cert. denied, appeal dismissed, 359 So.2d 1212 (Fla. 1978). See also Jacksonville Port Auth. v. Alamo Rent-A-Car, Inc., 600 So.2d 1159, 1162 (Fla. 1st DCA) ("`In common parlance, a tax is a forced charge or imposition, it operates whether we like it or not, and in no sense depends on the will or contract of the one on whom it is imposed.'") (quoting State ex rel. Gulfstream Park Racing Ass'n v. Florida State Racing Comm'n, 70 So.2d 375, 379 (Fla. 1953)), review denied, 613 So.2d 1 (Fla. 1992). We therefore conclude that the trial court erred in characterizing the franchise fees at bar, which constituted consideration for the contractual grant of the right to use county rights-of-way, as taxes.

7.
The court finally ruled, assuming the validity of the ordinances in question, that under the express language in the ordinances, the utilities had the right to terminate their respective franchises by giving the requisite notice specified therein, and because they had complied with such conditions, they lawfully exercised their rights to terminate unilaterally their franchise agreements. We agree. The ordinances expressly provide that before a utility's right to terminate can be extinguished, all utilities must agree to the terms of the franchise within two years. As the telephone utilities failed to participate, the condition failed, and the explicit language of the ordinances authorized the unilateral termination.
The counties, however, assert that because they substantially performed their agreements and/or made good-faith efforts to perform their portion of the contracts, but were prevented from fulfilling the same by the action of other parties, termination should be denied. We find these arguments unavailing in that the key provisions of the ordinances are couched in terms of the fairness of spreading the financial burden between all of the utilities, which purpose was defeated once the telephone companies refused to enter into the agreements.
AFFIRMED in part, REVERSED in part, and REMANDED for judgment consistent with this opinion.
BARFIELD and BENTON, JJ., concur.
NOTES
[1] As a consequence of our determination that the resolutions were beyond the scope of the counties' delegated authority, we see no need to reach the issue of whether, as the parties extensively argued, the grant of the franchise to Gulf Power could be validly accomplished by resolution rather than by ordinance, in that such argument presupposes a proper delegation of legislative authority to the counties to so act.