BOOTH, Chief Judge.
This cause is before us on appeal from the final judgment of the Duval County Circuit Court declaring invalid the “user fees,” provided in Chapter 796, Ordinance Code of the City of Jacksonville, and directing the City to refund certain fees paid under that ordinance.
Ordinance 82-419-612, enacted May 11, 1982, imposes “user fees” on certain vessels anchored in storage for more than 48 hours on the St. Johns River and its tributaries within city limits.[1] The ordinance' was adopted as an emergency measure to prevent the Port of Jacksonville from becoming a dumping ground for oil tankers not in use because of the worldwide oil glut. Appellees, the local maritime association and two ship owners, after seeking relief in the federal courts,[2] filed the instant suit in Duval County against the City on the grounds that the “fee” was a “tax” and violative of Article VII, Section 1, of the Constitution of the State of Florida. Appellees also sought a refund of amounts paid appellant under protest pursuant to the ordinance.[3]
The parties provided the trial court with a stipulation of facts which are summarized in part as follows:
1.The St. Johns River is a navigable waterway, upon which vessels engaged in interstate and foreign commerce sail to and from the Port of Jacksonville and occasionally anchor awaiting berths or employment.
2. The United States Coast Guard had approved the anchorage of the “Amoco Milford Haven” and the “Olympic” ships in the Port of Jacksonville pursuant to the guidelines established by the United States Department of Transportation. The United States Coast Guard and Department of Transportation regulate the anchorage and laying-up of vessels and provide contingency plans for leaving the port when bad weather requires. Appellees complied with such contingency plans.
3. Appellees had satisfied all regulations of the United States Department of Transportation and the United States Coast Guard, and were anchored with their permission.
4. Appellees were at all material times engaged in interstate commerce.
5. The user fee amount was not based on any loss of revenue to the City caused by the anchorage of each vessel or any cost analysis, but was based on what the ordinance drafter felt was fair. The ordinance was not designed as a revenue bill.
6. No additional services in the way of police and fire protection have been provided the anchored vessels as a result of fees paid.
7. No additional costs have been incurred by the City as a result of the anchorage of vessels in the port.
*772 8. Appellees and others have paid the fees under protest pursuant to the challenged ordinance.
The trial court’s final judgment is, in part, as follows:
The Defendant, CITY OF JACKSONVILLE, has not shown any authority for its enactment of the user fee, Chapter 796, Ordinance Code of the City of Jacksonville. The said user fee is not an ad valorem tax and is not issued pursuant to general law. Furthermore, this case does not present the issue of whether the user fee was for a proper municipal service, since it appears from the stipulated facts that no City service was provided. Therefore, the Court finds that the said ordinance is a violation of Article VII, Sec. 1 of the Constitution of the State of Florida (1968).
Finding sufficient economic coercion to constitute involuntary payment, the court ordered the City of Jacksonville to refund said amounts plus interest.
The City contends that the user fee is not a tax, a license, a permit or a revenue bill, but is more akin to a parking fee or fine imposed under the auspices of the City’s police powers invoked in order to protect the public from a public nuisance. The City, nevertheless, maintains that it is not regulating the use of its port by imposing such a fee, for it is preempted from doing so by the United States Coast Guard.
We affirm the trial court’s holding that the tax is unauthorized by the Constitution of the State of Florida and therefore illegal and void. The City, admittedly, has no authority to regulate the anchorage of a vessel in port, and the fee, invalid as an exercise of police powers under the facts here, is a tax. The City has proposed no valid theory under which it is authorized to impose the user fee in question. Absent the primary purpose of regulation, the exaction of a fee for the use of its port must be construed as nothing other than a tax on such privilege. See Tamiami Trail Tours, Inc. v. City of Orlando, 120 So.2d 170, 173 (Fla.1960).
We also affirm the allowance of re-coupment. North Miami v. Seaway Corp., 151 Fla. 301, 9 So.2d 705 (1942).[4] Also see St. Johns’ Electric Co. v. City of St. Augustine, 81 Fla. 588, 88 So. 387 (Fla.1921).
AFFIRMED.
SMITH and WENTWORTH, JJ., concur.

. As enrolled under Chapter 796, Ordinance Code of the City of Jacksonville, the user’s fee is computed at a rate of 50 cents per foot in length, per day, not to exceed $250 per day, and is to be paid weekly to the public parking officer. An administrative fee, not to exceed $500 per day, is to be assessed on affected ships which are in noncompliance with the ordinance.

. Appellees first sought injunctive and declaratory relief from the United States District Court for the Middle District of Florida, challenging the validity of the ordinance as violative of the United States and Florida Constitutions and the Federal Shipping Act, 46 U.S.C. Sections 801, et seq. After a trial, District Judge Susan H. Black ruled that primary jurisdiction is with the Federal Maritime Commission relative to the statutory challenge only; and, since the cause conceivably could be resolved on statutory rather than constitutional grounds, dismissed the action. See Jacksonville Maritime v. City of Jacksonville, 551 F.Supp. 1130 (M.D.Fla.1982). The Federal Maritime Commission declined jurisdiction, and the instant case was filed in the Circuit Court of Duval County.

.From December 3, 1981, through December 15, 1983, five vessels were anchored and resting on the bottom of the St. Johns River in ballast: the "Amoco Milford Haven," the "Olympic Gate,” the "Olympic Games,” the "Olympic Grace,” and the "Olympic Destiny.” Since July 21, 1982, the monies paid to the City of Jacksonville were deposited into the Registry of the United States District Court, subsequently returned to the City upon dismissal of Case No. 82-571-Civ-J-B, and deposited into a special escrow account. None of the ships has been anchored in the port since December 15, 1983.

. The Florida Supreme Court held, in North Miami v. Seaway Corporation, 151 Fla. 301, 9 So. 705, 707 (1942), the following:
In general, an action can only be maintained when the following conditions occur: (1) The tax must be illegal and void and not merely irregular; (2) it must have been paid under compulsion or the legal equivalent; (3) it must have been paid over by the collecting officer and have been received to the use of the municipality; (4) the party must not have elected to proceed in any remedy he may have had against the tax assessor or collector.