600 So.2d 1159 (1992)
JACKSONVILLE PORT AUTHORITY, a Florida Corporation, Appellant,
v.
ALAMO RENT-A-CAR, INC., a Florida Corporation, Appellee.
No. 91-2269.
District Court of Appeal of Florida, First District.
May 18, 1992.
Rehearing Denied June 30, 1992.
*1160 John A. Delaney, Gen. Counsel and Bruce Page, Asst. Counsel, Jacksonville, for appellant.
George A. Golder, Egerton K. van den Berg, and John R. Hamilton of Foley & Lardner, Orlando, for amici curiae City of Tallahassee, et al.
James C. Rinaman and Lee T. Griffin of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellee.
Margaret D. Mathews of Stagg, Hardy, Ferguson, Murnaghan & Mathews, P.A., Tampa, for amicus curiae Thrifty Rent-A-Car System, Inc.
J. Everett Wilson of Pestcoe & Associates, P.A., Coral Gables, for amicus curiae Dynasty Exp. Corp.
WIGGINTON, Judge.
The Jacksonville Port Authority (JPA) brings this appeal from a final declaratory judgment wherein the trial court found that the JPA had imposed an unauthorized tax against Alamo Rent-A-Car, Inc. (Alamo), by virtue of its charging Alamo a six percent "privilege fee" on Alamo's gross receipts. For the following reasons, we reverse.
The JPA, created by the Laws of Florida,[1] is an independent public agency that owns and operates the Jacksonville International Airport (JIA). The JPA possesses no independent taxing authority, and receives its revenues from state and federal grants, landing fees, rentals, concession fees and facility lease fees. Its powers derive from the Jacksonville Charter and Related Laws (Charter), by virtue of which the JPA may adopt rules and regulations regarding projects and facilities under its control as well as the power to fix, regulate and collect rates and charges for the services and facilities furnished by any project under its control.[2] In adopting said rules and regulations, the JPA is limited only to the extent that the rules and regulations "shall be just and reasonable and consistent with public interest."[3]
In 1987, the JPA began construction of a $101 million expansion program at JIA which was scheduled for completion in 1991. On April 27, 1989, the JPA adopted a resolution implementing rules and regulations and imposing on nontenant rental car companies a six percent gross receipts "user" or "privilege" fee for access by their vans to public airport roads and terminal ramps. In contrast, other commercial agencies making use of the airport, such as hotels, resorts, taxis and limousine services are charged only a flat rate of $75 to $150 per quarter and $.25 per trip.
Alamo has operated its off-airport rental and parking business since 1984 from property it owns and maintains approximately two miles from JIA. Alamo furnishes its customers with free courtesy van transportation to and from the airport on public roadways and ramps. Alamo has no contract or agreement with the JPA and until July 1, 1989, had free access to all ramps and roadways at the JIA, as did all other off-airport commercial enterprises and the general public. In addition, five "tenant" car rental agencies located on the airport, which competitively bid for and obtained lease agreements with the JPA, each pay ten percent of their gross receipts.
The stated purpose for enactment of the fee imposed on nontenant companies was three-fold: (1) to preserve current revenue, as tenant companies would be less likely to *1161 move off airport; (2) to narrow the competitive gap between the on and off airport companies; and (3) to fund airport expansion.
In the resolution, the JPA made findings that off-airport (nontenant) commercial operators derive substantial revenues from business generated at the airport, and that the benefits derived by the off-airport operators from their use of the airport bore no reasonable relationship to the small fees they were then required to pay. The JPA also found that the benefits derived by on-airport (tenant) and off-airport rental car agencies were similar, with the exception that on-airport agencies enjoy a two to three percent competitive advantage by way of "walk-up" customers. The JPA further stated in the resolution that it must take action to raise and protect revenues, and to maintain a fair and equitable schedule of rates and charges for all commercial beneficiaries.
The parties stipulated that both cost and benefit studies had been considered by the JPA before drafting the resolution, and that the information had been shared with all concerned. It was also stipulated, however, that the six percent fee did not directly correlate with any cost analysis performed; instead, the six percent figure was a factor of the ten percent fee charged the tenant companies reduced by the small percentage of competitive advantage the tenant companies enjoyed over the nontenant companies. Additionally, it was stipulated that the fees Alamo pays to the JPA are used to generate revenue for support of all three airports located in Jacksonville, even though Alamo uses only the JIA. Further, the six percent gross receipts fee paid by Alamo and the other nontenant companies was not specifically enumerated or pledged within the revenue bond issue financing the new airport.
Alamo filed suit prior to the effective date of the resolution, claiming that the six percent fee was effectively an unauthorized tax and was invalid as exceeding the JPA's authority to fix rates and charges for the facilities and services furnished which are just, reasonable and in the public interest, as authorized by the Charter. A non-jury trial was held during which the parties stipulated to the following issue and sub-issues relevant to this appeal:
... [W]hether the rate schedule imposed on off-airport rental car agencies by the JPA Rules and Regulations is unauthorized and not legally enforceable because:
a. It is an unauthorized tax pursuant to Article VII, section 1(a) of the Florida Constitution[;] or,
b. It exceeds the JPA's authority to "fix, regulate and collect rates and charges for the services and facilities under its control" (Charter); or,
c. It is not "just and reasonable and consistent with the public interest" (Charter)... .[[4]]
It was Alamo's contention before the trial court that any fee imposed on it by the JPA must be based on a "cost analysis" not of its use of the entire airport, but of its use strictly of the roadways and ramps at the JIA terminal as being the only "just and reasonable" method of charging for "services and facilities furnished." Alamo also asserted that its use of the JIA facilities is identical to usage by resort and hotel vans, taxis and limousines, and any "just and reasonable" fees imposed on Alamo should relate to those fees and not to the tenants' ten percent fee.
In a lengthy opinion, the trial court found that the fee was not authorized by the Charter, and was "therefore an illegal tax prohibited by Article VII, section 1(a) of the Constitution of the State of Florida (1968)." The court agreed with Alamo's assertion that the JPA exceeded its legal authority by imposing an unreasonable fee not related to or commensurate with Alamo's use of the facilities furnished. The court went on to find that Alamo's use of the JPA facilities "is identical to that of the taxis, limousines and hotel vans, in that the JPA provides no additional or different services or facilities to Alamo as compared to *1162 those other airport commercial users." The court found this to be a violation of the Charter which authorizes charges only for the "services and facilities provided," and concluded, therefore, that the six percent fee was not "just and reasonable and consistent with the public interest." Thus, the court reasoned that since the fee was not "just and reasonable," it was an unlawful tax.
We must agree with the JPA and amici curiae City of Tallahassee, et al., supporting the JPA, that in arriving at the foregoing conclusion, the trial court applied a faulty analysis of the issues and too-narrowly construed a U.S. Supreme Court decision, as well as erroneously ignored a plethora of case law upholding similar or identical gross receipt fees, or user fees, in other jurisdictions under like circumstances. First, drawing from the argument made by amici, it does not necessarily follow that if the fee is unauthorized under the Charter, it is a fortiori an unlawful tax. Rather, as they propound, the issue is twofold: (1) whether the six percent charge is a user fee or a tax; and (2) whether the six percent charge, if a fee and not a tax, is authorized by the JPA Charter. In response to the first issue, we agree with the JPA that the six percent gross receipts fee is not a tax.
The United States Supreme Court distinguished between a tax and a user fee, defining a tax as providing revenue for the general support of the government, while defining a user fee as imposing a specific charge for the use of publicly-owned or publicly-provided facilities or services. Commonwealth Edison Co. v. Montana, 453 U.S. 609, 621-622, 101 S.Ct. 2946, 2955, 69 L.Ed.2d 884, 896-897 (1981). The Florida Supreme Court has defined it thusly:
In common parlance, a tax is a forced charge or imposition, it operates whether we like it or not and in no sense depends on the will or contract of the one on whom it is imposed.
State ex rel. Gulfstream Park Racing Association v. Florida State Racing Commission, 70 So.2d 375, 379 (Fla. 1953) [citations omitted].
As observed by the JPA and amici, in this case the fee is for Alamo's use of all of the JPA's facilities which benefit Alamo by generating its business. If Alamo wished to avoid the fee, it could obtain its customers from another source. The subject charge is tied exclusively to Alamo's use of the airport facilities to conduct its business.
In analyzing the tax issue, the trial court recognized the validity, but misapplied the holding, of the United States Supreme Court's decision in Evansville-Vanderburgh Airport Authority Dist. v. Delta Airlines, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). In that decision, the Supreme Court evaluated airport charges as user fees, regarding it "as settled that a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the cost of their construction and maintenance may constitutionally be imposed." 405 U.S. at 714, 92 S.Ct. at 1354, 31 L.Ed.2d at 627.[5]
Prior to Evansville, an airport user fee was expressly held not to be a tax in Toye Brothers, Yellow Cab Co. v. Irby, 437 F.2d 806, 811 (5th Cir.1971). In that case, the Fifth Circuit held that a ten percent gross receipts charge imposed on off-airport transportation services was "not a tax in the traditional sense ... [i]t is rather compensation for use of the airport facilities."
Following Evansville, its principles were applied in a number of cases involving facts identical, or nearly so, to those presently before this court, to wit: the assessment of a privilege or user fee by an airport in the form of percentage of revenue charges to off-airport rent-a-car companies picking up and delivering passengers at airport terminals. Those decisions uniformly analyzed the charge as a user fee and not as a tax, ruling that an off-airport *1163 rent-a-car company benefits from, and therefore "uses," the entire airport facility at which it operates. See Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority, 906 F.2d 516 (11th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); General Rent-A-Car, Inc. v. Carol A. Roberts, et al., Case No. 87-8345-CIV-Marcus (S.D.Fla., Sept. 15, 1988); Club Car Rentals of Gainesville, Inc., d/b/a Budget Rent-A-Car of Gainesville v. The City of Gainesville and the Gainesville Regional Airport Authority, Case No. GCA 85-0177-MMP, 1988 WL 294258 (N.D.Fla., May 6, 1988); Airline Car Rental, Inc. v. Shreveport Airport Authority, 667 F. Supp. 303 (W.D.La. 1987); Baker Car Rentals, Inc. v. Gulfport-Biloxi Regional Airport, No. 79,854 (Miss. Chan.Ct. 1st Dist., June 2, 1982). See also Alamo Rent-A-Car, Inc. v. City of Palm Springs, 955 F.2d 30 (9th Cir.1992) (en banc).
For example, in Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority, wherein Alamo challenged a ten percent of revenue privilege fee enacted by the Sarasota-Manatee Airport Authority, the Eleventh Circuit Court of Appeals concluded:
The "benefits conferred" language of Evansville-Vanderburgh suggests that a broad construction of use is appropriate where the benefit derived by the user depends on the existence of the entire government provided facility.
906 F.2d at 520.
In addition, state appellate decisions have similarly held that percentage of revenue fees imposed by airports on off-airport rent-a-car companies are proper fees and not taxes. For instance, in Alamo Rent-A-Car, Inc. v. Board of Supervisors of Orange County, et al., 221 Cal. App.3d 198, 272 Cal. Rptr. 19 (1990), Alamo challenged a nine percent privilege fee imposed at the John Wayne Airport in Orange County, California, arguing, as it does here, that the fee could properly relate only to the roads and stops Alamo's vehicles used at the airport. However, the California Court of Appeal rejected Alamo's arguments and reversed a lower court decision for Alamo on its state law tax claim, stating in relevant part:
We are convinced the fees need not relate only to use of the airport roads and shuttle stops, but may apply to general airport maintenance and operational costs. They are not levied merely to cover the costs of a service enlarged because of the presence of Alamo. Rather, construction and maintenance of the Airport was undertaken for airline passengers, which in turn are the customers for both on- and off-site rental car companies. Alamo is but one of the businesses which flock to the area, desiring to pluck a portion of the existing commuter market arising from the Airport's already  established facility. The added burden Alamo places on the Airport includes, of course, the element of increased traffic from Alamo's shuttle buses and the need for a pickup/dropoff area. The benefit Alamo receives, however, flows from all phases of the airport operation.
Id. at 25 [emphasis in original].
Further, the court noted that the John Wayne Airport, as is true with the facilities provided by the JPA, "had to be self-sustaining, accomplished through rentals, fees, and charges levied against commercial users of the facilities, and at no cost to the local taxpayers." Id. at 23 [emphasis in original]. Moreover, the court distinguished the fee from a tax on the basis that it was "not compulsory; Alamo is only subject to the fee if it elects to do business at the Airport." Id. The court went on to hold that
[u]nder the circumstances of this case, the charge must be treated as a fee for specific entities which choose to operate on, and derive financial benefit from, the Airport, a self-financing activity. This fee is not a special tax... .
Id. See also Westrac, Inc. v. Walker Field Public Airport Authority, 812 P.2d 714 (Colo.Ct.App. 1991) (challenge against a ten percent of revenue privilege fee on off-airport rent-a-car operators rejected on the basis that the charge is not a tax but a *1164 permitted fee used to defray overall expenses of operating the airport and imposed only upon a portion of plaintiff's revenues generated by passengers who arrive at the facilities).
In the instant case, in arriving at its conclusion that the fee was an unauthorized tax, the trial court relied heavily on several Florida decisions which we find to be distinguishable. For instance, relying on the Florida Supreme Court's decision in Contractors & Builders Association v. City of Dunedin, 329 So.2d 314 (Fla. 1976), the trial court concluded that the fee was defective because the JPA was not circumscribed in its use of the funds received from the fee. However, that conclusion ignores the parties' stipulation to the effect that the funds were used only for the airport system. Moreover, it further overlooks the language in Dunedin indicating that the unrestricted use of such funds within the system for which the fee is imposed would present no constitutional defect. To the contrary, in Dunedin, the city could have used the funds for purposes entirely unrelated to the facilities that benefit those who pay the fee.
The trial court also relied on City of Jacksonville v. Jacksonville Maritime Association, 492 So.2d 770 (Fla. 1st DCA 1986), but the critical distinction in that case was the fact that the City of Jacksonville had no authority to regulate the use of the port. Absent the power to regulate the use of the port, the city in that case had no other means by which to justify the fee at issue. In contrast, here, the JPA unquestionably possesses the authority under the Charter to regulate the use of the commercial ramps and drives under its control. Further, as adroitly pointed out by the JPA and amici, the JPA operates as a proprietor of the airport system, and its imposition of the user fee is an incident of that proprietary status. Compare City of Dunedin, 329 So.2d at 319, wherein the court noted that "under the constitution, Dunedin, as the corporate proprietor of its water and sewer systems, can exercise the powers of any other such proprietor."
Thus, the crucial point in resolving the tax issue is to recognize that the JPA does not purport to regulate its airport system under the auspices of the general police power, but rather to do so as a function of its proprietary status. Consequently, the remaining cases relied on by the trial court, Bateman v. City of Winter Park, 160 Fla. 906, 37 So.2d 362 (1948), and Tamiami Trail Tours v. City of Orlando, 120 So.2d 170 (Fla. 1960), premised on a municipality's regulatory powers, can also be distinguished from the instant case. Again, in assessing and collecting the user fee, the JPA is acting in a proprietary capacity requiring those who benefit from its airports to pay their fair share of costs incurred in providing the benefits.[6]
Based on the foregoing, we accept the position of the JPA and amici that the fee is not a general revenue source for the support of a sovereign government. Instead, it is governed by entirely different principles based on Alamo's receipt of a special benefit from the JPA  the generation of its customers. Significantly, Alamo effectively conceded that the fee is in fact a user fee, when, as observed by the trial court, it asserted that any fee imposed on it by the JPA "must be based on a `cost analysis' of [its] use of road and ramps at the JIA terminal as the only `just and reasonable method' of charging for `services and facilities furnished to it.'" Thus, Alamo recognized the legitimacy of the JPA's charging it "something" to use the facilities; rather, the disagreement arose as to the amount charged and to the use of which "facilities" the fee should apply. Nonetheless, as will be discussed hereafter, since Alamo uses and benefits from all of the JPA's airport facilities, and since the fee is charged to Alamo as a percentage of the revenues from customers it picks up at JIA, and since Alamo pays the fee only if it uses and benefits from the facilities the fee supports, the fee is based on the furnishing of a specific benefit to Alamo and is thus *1165 not a tax but an authorized user fee under the Charter.
Turning now to the second issue of whether the JPA had the power to charge the privilege fee under the Charter, we agree with the JPA that the trial court impermissibly construed too narrowly the provisions of the Charter in contradiction to section 20 therein. Section 20 requires that the provisions of the act
... shall be liberally construed to accomplish the purposes provided for or intended to be provided for herein, and where strict construction would result in the defeat of the accomplishment of any of the acts authorized herein, and a liberal construction would permit or assist in the accomplishment thereof, the liberal construction shall be chosen.
Charter, Art. 5, section 20. Thus, contrary to the implicit finding of the trial court, the power accorded the JPA by section 3(7) of the Charter to "fix, regulate and collect rates and charges for the services and facilities furnished by any project under its control," is not self-limiting, but is limited only by the language in section 6 that "all rules and regulations promulgated and all impositions and exactions made by authority hereof shall be just and reasonable and consistent with public interest. ..." [emphasis added].
We therefore reject the trial court's interpretation of the Charter language to limit the JPA to fees which would compensate only for its cost in providing the facilities a given operator directly uses, i.e., the ramps and roadways specifically used by Alamo to pick up its customers. In that respect, the issue of defining the services or facilities an airport provides to an off-airport rent-a-car operator has been determined by various courts in other legal contexts but under identical circumstances, and these courts have uniformly ruled that the off-airport rent-a-car company benefits from, and therefore in a very real sense "uses," the entire airport facility at which it operates. See Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority; General Rent-A-Car, Inc. v. Carol A. Roberts; Club Car Rentals of Gainesville, Inc. d/b/a Budget Rent-A-Car of Gainesville v. The City of Gainesville and the Gainesville Regional Airport Authority; Alamo Rent-A-Car, Inc. v. Board of Supervisors of Orange County. In fact, the legal issue facing the court here regarding the JPA's authority under its Charter, was decided adversely to Alamo in Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority. There, the Eleventh Circuit rejected Alamo's claim that the airport's imposition of the fee was ultra vires. Although that decision, and the others cited, with the exception of Alamo Rent-A-Car, Inc. v. Board of Supervisors of Orange County, were decided on federal constitutional principles, we find them to be highly persuasive authority as involving circumstances and claims identical to those in the instant case, and therefore hold that the trial court erred in failing to apply these various precedents to resolve the issue in favor of the JPA in the instant case.
Based on this compendium of precedential authority, we further reject the trial court's conclusion that the privilege or user fee was not related to, or commensurate with, Alamo's use of the facilities furnished because its use is identical to that of taxis, limousines and hotel vans operating at the JIA. That distinction was specifically rejected in Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority, wherein the court concluded that
[t]he distinctions [between various types of operators] the Authority has drawn are based upon its rational assessment of the relative benefits and the extent of use of each category of vehicles that enter the airport.
825 F.2d 367 at 371 (11th Cir.1987). See also Club Car Rentals of Gainesville, slip op. at 10.
Several other courts have in addition made direct factual determinations that percentage privilege fees on off-airport operators are reasonable. See, e.g., Toye Brothers, Yellow Cab Company v. Irby; Airline Car Rental, Inc. v. Shreveport Airport Authority; General Rent-A-Car, Inc. v. Carol A. Roberts.
*1166 In conclusion, the JPA has the power under the Charter to charge the gross receipts fee to Alamo and other off-airport rent-a-car operators, and the six percent charge imposed is "just and reasonable and consistent with public interest." Consequently, the trial court erred as a matter of law in ruling that the user fee is an unlawful tax as not authorized by the JPA Charter, and that holding is hereby REVERSED.
SMITH and WEBSTER, JJ., concur.
NOTES
[1] Ch. 63-1447, Laws of Fla., as amended by Ch. 67-1533, Laws of Fla.
[2] Charter, Art. 5, §§ 3(7), 6.
[3] Charter, Art. 5, § 6.
[4] The remaining two sub-issues related to alleged violations of section 542.19, Florida Statutes (1989) (anti-trust) and section 286.043, Florida Statutes (1989) (bid preclusion).
[5] The "head tax" analyzed and approved in Evansville has since been superceded by Congress's enactment of the Anti-Head Tax Act, prohibiting head taxes on airline passengers. See Northwest Airlines, Inc. v. County of Kent, Michigan, 738 F. Supp. 1112 (W.D.Mich. 1990).
[6] For the same reasons, we reject, as well, the trial court's reliance on Broward County v. Janice Development Corp., 311 So.2d 371 (Fla. 4th DCA 1975).