JORGENSON, Judge.
We review the circuit court’s order upholding the constitutionality of a City of Miami ordinance regulating vending on public streets and sidewalks and denying permanent injunctive relief. For the following reasons, we affirm.
In January 1995, the City of Miami, by ordinance, established the Downtown Miami Special Vending District, which limits street vending to those vendors awarded franchises by lottery. Vendors must obtain $1 million in liability insurance before they can partid- *805 pate in the lottery. For the lottery winners, the ordinance requires franchise fees, hold harmless agreements, insurance, tax certificates, and compliance with applicable local and state regulations. Further, the ordinance sets forth specifications for vending pushcarts, and contemplates the city purchasing conforming carts with franchise revenues and then leasing them to the vendors.
Plaintiff Elsa Marina Zelaya Flores vends hot dogs from a push cart on the streets of downtown Miami. Plaintiff United Vendors of South Florida is an unincorporated association that is affiliated with the Amalgamated Clothing and Textile Workers Union, which purports to represent the interests of Miami street vendors. In June 1995, these plaintiff vendors filed a complaint seeking temporary and permanent injunctive relief against the city regarding enforcement and implementation of the ordinance. On the vendors’ motion for injunctive relief, the trial court upheld the constitutionality of portions of the ordinance providing for franchise fees and requiring liability and property insurance coverage, but temporarily precluded the city from implementing and enforcing these provisions until the trial court could conduct an evidentiary hearing to determine the reasonableness of the fees and coverage limits. The vendors appealed.
The vendors argue that the ordinance is an ultra-vires attempt by the City of Miami to impose an unconstitutional tax upon street vending, couched within a purported regulatory scheme. They point, for example, to the provision of the ordinance dividing downtown Miami into three separate vending areas with a graduated fee schedule that corresponds to the respective profitability of each of the areas;[1] and the alleged general economic benefits the city will obtain through leasing pushcarts that conform to the specifications of the ordinance. We disagree.
The ordinance provides that
[f]ees collected under this subsection are for franchises granted for the exclusive right to use a portion of the public right-of-way, and are in addition to other permit fees and occupational license taxes imposed by law.
All franchise fees collected pursuant to this section shall be placed in a special account established for the “Downtown Miami Special Vending District” by the City of Miami’s Director of Finance, and shall be utilized exclusively by the Executive Director, upon approval of the [Downtown Development Authority] Board of Directors, for the administration of this district, its management services and purchase or replacement of pushcarts and/or related equipment.
The Florida Constitution circumscribes a municipality’s ability to generate revenue through taxes, and Florida law does not provide for taxation of street vendors. See Art. VII, § 1(a), Fla. Const. Nonetheless, a municipality has the power to safeguard and maintain the character of its streets, sidewalks, and all other common grounds for the benefit of the general public through regulation. State ex rel. Nicholas v. Headley, 48 So.2d 80, 81 (Fla.1950); Lloyd Enters., Inc. v. Department of Revenue, 651 So.2d 735, 741 (Fla. 5th DCA 1995) (Sharp, J., concurring); City of Key West v. Marrone, 555 So.2d 439 (Fla. 3d DCA 1990). The number of vending carts permitted to consume public space in congested areas may be validly limited. City of Key West v. Marrone, 555 So.2d 439 (Fla. 3d DCA 1990); see also City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); State ex rel. Pennington v. Quigg, 94 Fla. 1056, 114 So. 859 (1927). Such limitations on competition will likely augment the economic value of a permitted vendor’s franchise — more so in areas of higher profitability. The city is entitled to exact a higher fee for granting use of this more valuable public property. See City of Plant City v. Mayo, 337 So.2d 966 (Fla.1976); Santa Rosa County v. Gulf Power Co., 635 So.2d 96 (Fla. 1st DCA), cause dismissed sub nom. Escambia River Elec. Co-op., Inc. v. Santa Rosa County, 641 So.2d 1345 (Fla.1994), and rev. denied, 645 So.2d 452 (Fla.1994); Jack *806 sonville Port Auth. v. Alamo Rent-A-Car,. Inc., 600 So.2d 1159 (Fla. 1st DCA), rev. denied, 613 So.2d 1 (Fla.1992).
This graduated scheme of franchise fees is not a tax:
The United States Supreme Court distinguished between a tax and a user fee, defining a tax as providing revenue for the general support of the government, while defining a user fee as imposing a specific charge for the use of publicly-owned or publicly-provided facilities or services. Commonwealth Edison Co. v. Montana, 453 U.S. 609, 621-622,101 S.Ct. 2946, 2955, 69 L.Ed.2d 884, 896-897 (1981). The Florida Supreme Court has defined it thusly:
In common parlance, a tax is a forced charge or imposition, it operates whether we like it or not and in no sense depends on the will or contract of the one on whom it is imposed.
State ex rel. Gulfstream Park Racing Ass’n v. Florida State Racing Comm’n, 70 So.2d 375, 379 (Fla.1953) [citations omitted].
Jacksonville Port Auth., 600 So.2d at 1162. Two 1976 Florida Supreme Court decisions addressed whether fees imposed by municipalities were invalid taxes or valid regulatory fees. In Contractors & Builders Ass’n v. City of Dunedin, 329 So.2d 314 (Fla.1976), building contractors and landowners challenged a municipal ordinance that charged an impact fee for the privilege of connecting to the city’s water and sewer system.
Plaintiffs contended that the portion of the monies collected that was earmarked for capital improvements to the water and sewer system as a whole[2] constituted taxes which the municipality is forbidden to impose in the absence of enabling legislation. The Court noted that in general, connection fees are not taxes but are analogous to fees collected by private utilities for services rendered. Nonetheless, the connection fees at issue were invalid because the ordinance provided insufficient restrictions on their use:
The failure to include necessary restrictions on the use of the fund is bound to result in confusion, at best. City personnel may come and go before the fund is exhausted, yet there is nothing in writing to guide their use of these moneys, although certain uses, even within the water and sewer systems, would undercut the legal basis for the jund’s existence. There is no justification for such casual handling of public moneys and we therefore hold that the ordinance is defective for failure to spell out necessary restrictions on the use of the fees it authorizes to be collected.
Id. at 321 (emphasis added).
Subsequently that same year, the Florida Supreme Court reviewed a decision of the Public Service Commission that municipal franchise fees paid by electric utility companies in Florida should no longer be considered as a general operating expense payable by all of the utilities’ customers, but rather should be separately billed by the utility to the customers of the municipalities which impose the fees. City of Plant City v. Mayo, 337 So.2d 966 (Fla.1976). The Court rejected the Commission’s arguments which analyzed the cities’ franchise fees as taxes:
we have absolutely no difficulty in holding that the franchise fees payable by Tampa Electric are not ‘taxes’. The cities would lack lawful authority to impose taxes of this type and, unlike other governmental levies, the charges here are bargained for in exchange for specific property rights relinquished by the cities.
*807 Id. at 973 (emphasis added). Unlike Dunedin, Plant City does not address the specific use of the funds collected, but, rather, focuses on the public’s entitlement to some compensation for relinquishing property rights to private entities. Such a compensation scheme is not a tax.
The rationale of Plant City has been applied to distinguish fees from taxes in the contexts of public rights-of-way used by utilities and public airports serviced by rental car agencies. In City of Hialeah Gardens v. Dade County, 348 So.2d 1174 (Fla. 3d DCA 1977), cert. den. and appeal dismissed, 359 So.2d 1212 (Fla.1978), Hialeah Gardens challenged Dade County’s use of Florida Power & Light franchise revenues to pay special obligation improvement bonds which were issued to finance the construction or acquisition of capital improvements, including county parks, as violating the taxation restrictions of Article VIII, Section 1(h) of the Florida Constitution. Citing Plant City, we responded that “franchise fees are not taxes, but rather consideration paid by the utility for the grant of the franchise.” Id. at 1180.
In Jacksonville Port Authority v. Alamo Rent-A-Car, 600 So.2d 1159 (Fla. 1st DCA), rev. denied, 613 So.2d 1 (Fla.1992), the First District Court of Appeal held that the city port authority’s 6% gross receipts charge on off-airport rental car agencies was not a tax. The parties had stipulated that the six percent fee did not directly correlate with any cost analysis performed and that the fees Alamo paid were used to generate revenue for support of all three local airports, even though Alamo only served one of the airports. The court cited the analysis of the California Court of Appeal in Alamo Rent-A-Car, Inc. v. Board of Supervisors, 221 Cal.App.3d 198, 272 Cal.Rptr. 19, 25 (1990):
We are convinced the fees need not relate only to use of the airport roads and shuttle stops, but may apply to general airport maintenance and operational costs. They are not levied merely to cover the costs of a service enlarged because of the presence of Alamo. Rather, construction and maintenance of the Airport was undertaken for airline passengers, which in turn are the customers for both on- and off-site rental car companies. Alamo is but one of the businesses which flock to the area, desiring to pluck a portion of the existing commuter market arising from the Airport’s already-established facility. The added burden Alamo places on the Airport includes, of course, the element of increased traffic from Alamo’s shuttle buses and the need for a pickup/dropoff area. The benefit Alamo receives, however, flows from all phases of the airport operation.
[[Image here]]
[T]he charge must be treated as a fee for specific entities which choose to operate on, and derive financial benefit from, the Airport, a self-financing activity. This fee is not a special tax.
600 So.2d at 1163. The Jacksonville Port Authority court concluded that in Dunedin, the Florida Supreme Court indicated that “the unrestricted use of ... funds within the system for which the fee is imposed would present no constitutional defect,” and that the City of Dunedin “could have used the funds for purposes entirely unrelated to the facilities that benefit those who pay the fee.” 600 So.2d at 1164.
The First District again focused on franchise fees as consideration for use of public property in Santa Rosa County v. Gulf Power Co., 635 So.2d 96 (Fla. 1st DCA 1994). The trial court had entered a declaratory judgment precluding Santa Rosa and Escambia counties from imposing franchise fees on utilities. The trial court held that because the counties presented no evidence showing that the fees were based upon a reasonable rental value for the utilities’ use of the counties’ rights-of-way, the fees, as structured, constituted impermissible taxes. The First District reversed on the authority of Plant City.
Dunedin stands for the general proposition that absent specific constitutional or statutory authority, revenues exacted from a private entity for the privilege of using municipal services must be earmarked to cover expenses occasioned directly by extending service to that entity. Plant City, and its progeny, Hialeah Gardens, Jacksonville Port Authority, and Santa Rosa, stand for an alternative proposition. Municipalities may *808 exact fees as recompense from those who are given special rights to use public land. The use of the fees collected need not strictly satisfy the Dunedin constraints, but rather the fees need only fund the general municipal plan or purpose that allows the infringement of the public right-of-way by the franchise recipients.[3] The City of Miami ordinance does this by earmarking the funds for the administration and management of the Downtown Miami Special Vending District and the purchase and replacement of conforming pushcarts and similar equipment. If, as the vendors have suggested, the city may lease or sell its pushcarts at a profit, we would expect that these profits would likewise be reinvested in the vending district. However, this issue is not before us and does not affect the validity of the ordinance.
Finally, the vendors argue that the ordinance violates section 166.221, Florida Statutes, which provides
A municipality may levy reasonable business, professional, and occupational regulatory fees, commensurate with the cost of the regulatory activity, including consumer protection, on such classes of businesses, professions, and occupations, the regulation of which has not been preempted by the state or a county pursuant to a county charter.
(emphasis added). We addressed this provision in the context of vendor regulation in City of Key West v. Marrone, 555 So.2d 439 (Fla. 3d DCA 1990):
First, the City of Key West has enacted a comprehensive municipal ordinance [Secs. 107.25 — 107.37, Code of Ordinances, City of Key West, Fla.] regulating mobile vendors who sell food, goods, services, and rentals while operating carts and other vehicles on the public roadways of Key West. Such vendors are required to obtain a mobile vendor license and to pay a franchise fee, a processing fee, and a solid waste collection fee if dealing in edibles; a cap of fifty is placed upon the number of such licenses, with license vacancies caused by attrition filled by an annual lottery. The ordinance places limitations upon the location of carts, hours of use, and amount of space occupied; owners must personally conduct the business and may not be absent from the cart or stand more than a certain number of hours per day and days per year; liability insurance is required; and the mobile vendor license is not transferable.
Second, given this extensive regulatory scheme, we conclude that the subject ordinance does not impose an occupational license tax for the privilege of engaging in a business in Key West, Sec. 205.042, Fla. Stat. (1987); instead, it imposes an occupational regulatory fee for the more limited privilege of doing business on the public roadways of Key West, which fee is used to defray the costs of regulating the mobile vendor business in Key West. Sec. 166.221, Fla. Stat. (1987). The license authorized by the ordinance is therefore a business regulatory license and is not an occupational license.
In Key West, we did not examine the validity of the fees, but rather merely characterized them as regulatory fees rather than an authorized license taxes in determining that section 205.043, Florida Statutes (1989), did not govern the transferability of municipal vendor licenses. Since its 1973 enactment, section 166.221 has received little consideration from the appellate courts outside disputes over taxes to offset municipal bond indebtedness. We do not believe that the statute is intended to impose restrictions on funds collected in exchange for exclusive rights to use public property beyond the constitutional restrictions outlined above.
In sum, the challenged ordinance, as drafted, creates a valid regulatory scheme imposing a constitutional franchise fee upon municipal vendors. In the absence of evidence to the contrary, we presume that the City of Miami will enforce the ordinance and apply *809 the funds collected within the constraints of Florida law.
Affirmed.

. The ordinance designates the fees as follows: There shall be a monthly franchise fee of One Hundred and Fifty Dollars ($150) for Area A, Seventy-Five Dollars ($75) for Area B, and Twenty-Five Dollars ($25) for Area C.

. The vendors challenged the following provision of the ordinance:
In addition to the meter installation charges described herein, there shall be paid an assessment to defray the cost of production, distribution, transmission and treatment facilities for water and sewer provided at the expense of the City of Dunedin, as follows:
Each dwelling unit; for water_$325.00
for sewer. 475.00
Each transient unit; for water ... 150.00
for sewer. 275.00
Each business unit; for water.... 325.00
for sewer. 475.00
(d) The assessments as set forth herein shall be payable upon issuance of the building permit for said unit or units in the case of new construction, or in the case of a presently existing structure or structures, such assessments shall be payable when the permits for water or sewer connections are issued.

. The vendors' reliance primarily on Tamiami Trail Tours, Inc. v. City of Orlando, 120 So.2d 170 (Fla.1960), and Broward County v. Janis Dev. Corp., 311 So.2d 371 (Fla. 4th DCA 1975), is misplaced. Those cases did not involve the exclusive use of public property and would be otherwise superseded by the Florida Supreme Court cases relied upon herein.