NO. 07-09-0262-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL B

 

JANUARY 7, 2010

______________________________

 

BRET ALAN AVERY, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

_________________________________

 

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

 

NO. 19996-C; HONORABLE ANA ESTEVEZ, JUDGE

_______________________________

 

 

Before QUINN, C.J., and CAMPBELL and
HANCOCK, JJ.

ON ABATEMENT AND REMAND

            Appellant, Bret Alan Avery, appeals
from his conviction for possession of a controlled substance in a drug-free
zone and sentence, pronounced on July 23, 2009, of 17 years incarceration in
the Texas Department of Criminal Justice, Institutional Division.  Appellant filed notice of appeal on August 3,
2009.  

            The clerk’s record was filed on
September 24, 2009.  The reporter’s
record was due on October 26, 2009.  The
reporter neither filed the record nor requested an extension of time to file
the record by that date.  On November 13,
2009, the reporter requested an extension of time to file the record and
indicated that the record was being edited at that time.  The Court granted this extension request,
making the reporter’s record due on December 7, 2009.  On December 8, 2009, the reporter again filed
a request for extension of time to file the record indicating that she was
having a difficult time editing the record “due to the sound I am proofing with
as well as the way the attorneys presented their cases.”  The Court granted this extension request,
making the reporter’s record due on December 28, 2009.  On December 29, 2009, the reporter filed a
third request for extension of time to file the record indicating only that “I
am completing this record.  Please give
me 30 more days.”  According to the
reporter’s monthly report, this record is “being proofread.”  There is no explanation provided as to why the
reporter needs 30 days to proofread the record in this case.  As such, we deny the reporter’s third request
for extension of time to file the reporter’s record as not being supported by
good cause.

            Accordingly, we abate this appeal
and remand the cause to the trial court for further proceedings.  See Tex.
R. App. P. 35.3(c).  Upon remand,
the trial court shall immediately cause notice of a hearing to be given and,
thereafter, conduct a hearing to determine whether the reporter’s caseload is
such that an alternate or substitute reporter should or can be appointed to
complete the record in this appeal in a timely manner.  If so, the trial court is directed to take
whatever steps are necessary to ensure that the reporter’s record in this
appeal is filed as soon as practicable.

            The trial court shall cause the
hearing to be transcribed.  In addition,
the trial court shall (1) execute findings of fact and conclusions of law
addressing the foregoing issues, (2) cause a supplemental clerk’s record to be
developed containing its findings of fact and conclusions of law and any orders
it may issue relating to this matter, and (3) cause a reporter’s record to be
developed transcribing the evidence and arguments presented at the
aforementioned hearing, if any.  The trial
court shall then file the supplemental clerk’s record and any reporter’s record
transcribing the hearing with the Clerk of this Court on or before February 8,
2010.  Should further time be needed by
the trial court to perform these tasks, same must be requested before February
8, 2010.

            It is so ordered.

                                                                        Per
Curiam

 

Do
not publish.  

                                                






ssibility. Given the nature of the car rental
business, as recognized by the ordinance's presumption that 90% of the business of an off-airport
car rental company's business is airport-generated, the decision to obtain business from the City's
airport cannot be considered a voluntary choice.


 In Conlen Grain and Mercantile, Inc. v. Texas Grain Sorghum Producers Board, 519
S.W.2d at 620, the Grain Sorghum Producers Board, a state agency, imposed an assessment on
grain sorghum to be collected by the grain sorghum processors. The Texas Supreme Court found
the assessment to be a tax despite provisions allowing the producer to recover the assessment paid. 
Id. at 623. The statute authorizing the assessment by the Board (8) only provided for collection by
"processors." (9) Because the definition of processors was limited to "persons within this state," (10)
the statute did not prevent producers from avoiding the assessment by selling grain sorghum to
processors in other states. Even so, this possibility did not prevent the supreme court from finding
that the assessment was an "enforced contribution of money" rather than a voluntary payment. 
Id. at 623. The fee in question here is no more voluntary than was the assessment imposed in
Conlen.


 In challenging Currey's argument, the City relies on cases discussing privilege fees
imposed to offset the cost of providing a benefit to the user, as well as cases discussing user fees
imposed for the purpose of regulation or as an economic disincentive. The City cites Rainey v.
Malone, 141 S.W.2d 713 (Tex.Civ.App.--Austin 1940, no writ), in support of its position that
the user fee imposed by the ordinance is justified by the benefits Currey receives "in a manner not
shared by the general public." In Rainey, a student of the University of Texas challenged a $1
student union fee imposed on all students by the university. Id. at 714. According to the enabling
statute, use of the revenue generated by this fee was:


 for the sole purpose of operating, maintaining and improving the Texas Union;
provided, however, that the amount of this fee may be changed at any time by the
Board of Regents within the limits hereinbefore fixed in order that sufficient funds
to support the Union may be raised and yet insuring that no surplus, other than the
customary reserves, shall ever be accumulated.


Id. at 717. Because the revenue generated by this fee was to be placed in a "Student Union Fee
Account" and used exclusively for operation and improvement of the student union, the court held
that it was a "privilege" or user fee. Id.


 In contrast, revenues raised by the fee imposed by the City's ordinance are, by its own
terms, used to pay the general operating expenses of the entire airport instead of limiting the
application of the funds to only those facilities used by off-airport operators. The fact that the
facilities used by Currey and the other off-airport operators would not exist but for the overall
operation of the airport presents no distinction from the fact in Rainey that the student union would
not have existed but for the operation of the entire university. In sum, the fee in question here
is not a "privilege fee" of the type approved in Rainey.


 The City also cites several cases from federal courts (11) and a sister state (12) where similar fees
have been upheld based, in part, on findings that the user benefited from the existence of the
entire airport and not just the use of the airport's roadways. However, each of the federal cases
cited by the City involved challenges to fees on the basis that they were violative of the Commerce
Clause of the United States Constitution. (13) To determine whether a fee violates the Commerce
Clause, courts apply the "fair approximation of use" test. (14) Under this test, courts determine
whether a fee places an impermissible burden on interstate commerce by considering the
relationship between the fee imposed and the benefit received. For example, the court in Alamo
considered the cost of operating the entire airport in determining the reasonableness of the fees
in relationship to the costs incurred in operating the airport. Alamo, 906 F.2d at 521.


 A fee whose primary purpose is clearly to raise revenue could easily meet the fair
approximation of use test and thus be acceptable under the federal constitution's commerce clause. 
Therefore, the federal cases cited by the City provide no guidance for us in applying the Conlen
test to determine whether a fee is a user fee or amounts to a revenue producing tax under state
law.


 Based on its summary judgment evidence that the revenue generated by the ordinance is
expected to produce only 0.216% of the operating expense of the airport, the City argues that the
fee's primary purpose cannot be to raise revenue. We disagree.


 The correlation between the amount of revenue generated and total expenditures is not
probative of the purpose of a legislatively imposed fee. For example, it cannot be questioned that
an occupation tax, such as the $200 annual occupation tax imposed on attorneys, (15) is imposed for
the purpose of raising revenue. The fact that revenue from the tax may provide only 0.0314%
of the state's operating expenses does not alter its character as revenue raising. (16)


 For these reasons, we overrule the City's fourth point in which it contends that the trial
court erred in finding that the user fee was a tax because there was insufficient evidence
concerning the cost of regulating off-airport operators.


 Next, we must decide if the ordinance's user fee has a regulatory justification. The City
relies on Creedmoor, 784 S.W.2d at 79, and Beckendorff, 558 S.W.2d at 75, to support its
position that the ordinance has a regulatory justification. Both of these cases involved challenges
to user fees for the withdrawal of groundwater. In determining that the fees were not improper
taxes, the Creedmoor and Beckendorff courts found that the fees imposed economic disincentives
to the use of natural resources and, as such, were primarily regulatory in purpose. The revenue
raised was merely a byproduct of the fee's primary purpose. Creedmoor, 784 S.W.2d at 82;
Beckendorff, 558 S.W.2d at 80.


 In considering those cases, it must be noted that the agencies seeking to impose the charges
in Creedmoor and Beckendorff were charged with the responsibility of ensuring the "conservation,
preservation, protection, recharging, [and] prevention of waste of the underground water,"
Creedmoor, 784 S.W.2d at 80-81, and to "provide for the regulation of the withdrawal of
groundwater within the boundaries of the district for the purpose of ending subsidence,"
Beckendorff, 558 S.W.2d at 78. The imposition of economic disincentives for withdrawing
groundwater clearly and directly served the regulatory purpose with which the agencies were
charged.


 The City argues that the primary purpose of the user fee is to regulate, rather than to raise
revenue, because the fee removes the economic incentive that businesses renting space at the
airport might otherwise have if they moved off of the airport. We cannot agree that this is a
regulatory power within the scope of the powers conferred upon the City by the Municipal
Airports Act.


 The imposition of an economic disincentive to prevent a particular type of business from
being conducted off, as opposed to on, the City's airport property does not regulate airport
activities. Rather, the disincentive infringes upon the ability of a business to choose not to enter
into a contract with the City. We do not believe that the City's authority to enter into contracts, (17)
even exclusive contracts, for the provision of services at the airport, includes the power to coerce
those who have contracted, or might contract, with the City into maintaining, or entering into,
such contracts.


 Having found that the fees sought to be collected by the City cannot be justified as a
privilege fee for the use of the airport's roadways or as a regulatory measure, we are forced to
conclude that the summary judgment evidence establishes, as a matter of law, that the primary
purpose of the fee is to produce revenue. Based on this conclusion, under the longstanding rule
in Texas, we must find, as did the trial court, that the City's ordinance imposes a tax. As the tax
is only imposed on those engaged in a particular occupation, the tax is necessarily an occupation
tax, Conlen, 519 S.W.2d at 624, and, as such, is in direct conflict with Article VIII, section 1(f)
of the Texas Constitution. Therefore, the user fee provisions of the City's ordinance are void. 
Hoefling v. City of San Antonio, 85 Tex. 228, 20 S.W. 85, 88-89 (1892). Having shown the trial
court that the user fee provisions of the ordinance were void and that enforcement of the
provisions threatened a property right, Currey was entitled to the judgment declaring the user fee
provisions of the ordinance void and enjoining the collection of those fees. The City's first point
is overruled in part. The City's second, third, fifth, sixth, and seventh points of error are
overruled.


 Our holding that the user fee provisions of the ordinance are void as violative of the Texas
Constitution obviates any discussion of the City's eighth and twenty-second points challenging the
trial court's ruling that the fee was an unconstitutional attempt to levy an occupational tax upon
a mechanical pursuit.


 In its twenty-third point, the City asserts that the trial court erred in awarding Currey
attorney's fees. The propriety of an award of attorney's fee against a governmental entity in a
declaratory judgment action is unsettled. Several cases have held that attorney's fees may be
awarded in such cases only when the defense of sovereign immunity has not been raised. Waugh
v. City of Dallas, 814 S.W.2d 492, 497 (Tex.App.--Dallas 1991, writ denied); Rodeheaver v.
Steigerwald, 807 S.W.2d 790, 793 (Tex.App.--Houston [14th Dist.] 1991, writ denied), cert.
denied, ___ U.S.___, 112 S.Ct. 1167, 117 L.Ed.2d 414 (1992); Bullock v. Regular Veterans
Assoc. No. 76, 806 S.W.2d 311, 315 (Tex.App.--Austin 1991, no writ); Falls County v. Perkins
and Cullum, 798 S.W.2d 868, 872 (Tex.App.--Fort Worth 1990, no writ). Other cases have held
that a governmental unit may be liable for attorney's fees in a declaratory judgment action without
stating whether or not the defense of sovereign immunity had been invoked. Duncan v. Pogue,
759 S.W.2d 435, 435-36 (Tex. 1988); Hooten v. Enriquez, 863 S.W.2d 522, 533 (Tex.App.--El
Paso 1993, no writ). Here, the City clearly raised the defense of sovereign immunity in its
original answer. That being so, we are squarely presented with the question of whether attorney's
fees may be awarded against a municipality in an action brought under the Uniform Declaratory
Judgments Act (18) (the Act).


 City of El Paso v. Croom Const. Co., 864 S.W.2d 153 (Tex.App.--El Paso 1993, no writ),
is the only case we have found in which a similar question was expressly presented and decided. 
In that case, the majority concluded that attorney's fees may be awarded against a municipality
in a declaratory judgment action. Croom, 864 S.W.2d at 155. En route to its decision, the court
noted that the Act applies to "persons" defined as follows:


 In this chapter, 'person' means an individual, partnership, joint-stock company,
unincorporated association or society, or municipal or other corporation of any
character. (emphasis added).


Id. at 154-55 (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.001 (Vernon 1986)).


 We join with the El Paso Court of Appeals in concluding that the Act clearly waives
immunity for municipalities in actions seeking declaratory judgments and, indeed, requires their
joinder in any action involving the validity of a municipal ordinance. See Tex. Civ. Prac. &
Rem. Code Ann. §§ 37.004, 37.006 (Vernon 1986).


 Section 37.009 of the Act provides that, "In any proceeding under this chapter, the court
may award costs and reasonable and necessary attorney's fees as are equitable and just." Id. §
37.009. As did the El Paso court, we find the legislature expressly included municipal
corporations within the full ambit of the Act. Indeed, there is nothing in the Act indicating any
legislative intent to exempt municipalities from the section authorizing the award of attorney's fees
and costs. Accordingly, we overrule the City's twenty-third point.


 Finally, the remainder of the City's points fail to meet the minimum requisites of Rule
74(f) of the Texas Rules of Appellate Procedure. The City fails to cite any authority or present
any argument of more than one sentence in its ninth, twelfth, nineteenth, and twentieth points of
error. The eighteenth point contains a two-sentence argument. Failure to cite authority or discuss
the facts requisite to maintain a point of error waives the point. New York Underwriters Ins. v.
State Farm, 856 S.W.2d 194, 204 (Tex.App.--Dallas 1993, no writ); Board of Comm. of Beaver
County v. Amarillo Hospital Dist., 835 S.W.2d 115, 122-23 (Tex.App.--Amarillo 1992, no writ). 
Consequently, we need not address these points.


 In conclusion, we hold that the trial court erred in declaring invalid and enjoining the
enforcement of those provisions of the off-airport user fee ordinance requiring permits and
payment of the annual fees for those permits. However, the trial court did not err in declaring
invalid the user fee provisions of the ordinance and enjoining the City from seeking to recover
those fees. Nor did it err in awarding attorney's fees to Currey.


 Accordingly, the judgment of the trial court is reformed to delete that portion declaring
invalid and enjoining enforcement of those portions of the ordinance requiring off-airport
operators to obtain permits and to pay an annual fee for such permits. Tex. R. App. P. 80(b). 
As reformed, the judgment is affirmed.


 John T. Boyd

 Justice


Do not publish.
1. Ground transportation services are defined by the ordinance as "[c]arrying, delivering, or
transporting passengers, customers, baggage, cargo, freight, or mail for consideration or as a
courtesy to or from an off-airport operator's place of business."
2. The ordinance offers no specific mechanism for meeting this burden or for further review if
the City and operator do not agree on the percentage of airport generated business.
3. The record does not reflect if this requirement is placed on those who rent space at the
airport.
4. Each of those cases arose in the context of claimed violations of federal antitrust law. 
5. Acts of April 7, 1913, 33rd Leg., 1913 Tex. Gen. Laws 307.
6. The City has notably ignored the first condition imposed on recipients of airport development
grants, i.e., that "the airport to which the project relates [] be available for public use on fair and
reasonable terms without unjust discrimination. . . ." 49 App. U.S.C. § 2210(a)(1) (1988).
7. The City complains of Currey's offering the first finding as summary judgment evidence even
though an identical statement is contained in an affidavit filed by the City as summary judgment
evidence.
8. Act of June 12, 1967, 60th Leg., R.S., ch. 462, 1967 Tex. Gen. Laws 1052 (repealed 1981).
9. Id. § 15.
10. Id. § 2(4).
11. Alamo Rent-A-Car, Inc. v. City of Palm Springs, 955 F.2d 30 (9th Cir. 1991)(per curiam);
Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth., 906 F.2d 516 (11th Cir. 1990), cert.
denied, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); Toye Bros. Yellow Cab Co.
v. Irby, 437 F.2d 806 (5th Cir. 1971); Airline Car Rental, Inc. v. Shreveport Airport Auth., 667
F.Supp. 303 (W.D. La. 1987). Not cited by the City, but relevant to our discussion is Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620
(1972).
12. Jacksonville Port Authority v. Alamo Rent-A-Car, Inc., 600 So.2d 1159 (Fla.Dist.Ct.App.
1992). 
13. U.S. Const. art. I, § 8, cl. 3. In Jacksonville Port Authority, the Florida appellate court
misapplied the reasoning of the cases discussing the commerce clause to determine the status of
a fee. In apparent reliance on the analysis made in Jacksonville Port Authority, the City contends
that the difference between taxes and user fees is defined in Commonwealth Edison Co. v.
Montana, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981). This is an inaccurate reading
of that case. The Court in Commonwealth Edison did not discuss whether the charge was a user
fee or a tax, rather, it accepted the Montana Supreme Court's characterization of the charge as a
tax and explicitly "put to one side" those cases reviewing challenges to user fees. Id. at 621.
14. The United States Supreme Court set out this test in Evansville-Vanderburg Airport Auth.,
498 U.S. at 716-17.
15. Tex. Tax Code Ann. § 191.142 (Vernon 1992).
16. This value is calculated assuming that all 55,000 of the state's licensed attorneys are liable
for the tax (55,000 x $200 = $11,000,000). Dividing the revenue raised, $11 million, by one
half of the state's $70 billion biennial budget, Legislative Budget Board, Fiscal Size Up, 1994-95
Biennium, or $35 billion, results in the figure of 0.000314, or 0.0314 percent.

17. As conferred upon the City by Article 46d-4 of the Municipal Airports Act.
18. Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (Vernon 1986).